FILED
2010 Mar-24  PM 03:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| **ELIZABETH MEADOWS,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **vs.** | } | **7:09 - cv - 0605** |
| | } | |
| **FRANKLIN COLLECTION** | } | |
| **SERVICE, INC.,** | } | |
| | } | |
| **Defendant.** | } | |

---

## MEMORANDUM BRIEF IN SUPPORT OF MOTION FOR
## PARTIAL SUMMARY JUDGMENT

---

COMES NOW the Plaintiff, Elizabeth Meadows ("Ms. Meadows") by and through her attorneys of record and, in support of her Motion for Partial Summary Judgment, hereby submits this Memorandum Brief in addition to Evidentiary Submissions previously submitted to this Court and cited herein.  For the reasons discussed below, partial summary judgment is due to be granted on the issue of whether or not Defendant Franklin's conduct is subject to the Regulations and Prohibitions of the Telephone Consumer Protection Act ("TCPA") under the particular facts of this case.

# TABLE OF CONTENTS

I.    Plaintiff's Statement of Undisputed Facts...........................................p. 1

II.   Legal Standard for Motion for Summary Judgment.........................p. 8

III.  Argument and Supporting Authority...................................................p. 9

    A.    Defendant is Subject to the Regulations and Prohibitions of

        the TCPA based on its Conduct with Ms. Meadows................p. 9

        1.   Each and every call Defendant made adversely affected

            the privacy rights of Ms. Meadows........ ......................p. 11

        2.   Defendant Franklin engaged in telephone solicitation

            with respect to the calls made to Ms. Meadows, a

            non-debtor........................................................................p. 14

        3.   Ms. Meadows had no Existing Business Relationship

            with Defendant Franklin.................................................p. 19

        4.   Ms. Meadows did not give Defendant Franklin express

            authorization to call her.................................................p. 21

    B.    Defendant Franklin is not exempt from the TCPA based on

        its status as a debt collector....................................................p. 22

IV.   Conclusion.......................................................................................p. 24

      Prayer for Relief...............................................................................p. 25

      Certificate of Service........................................................................p. 27

## I. STATEMENT OF UNDISPUTED FACTS

1.      Defendant Franklin Collection Service Inc. ("Defendant Franklin") is a debt collector engaged in the business of collecting debts.[1]

2.      Beginning, at least, on or about October 27, 2006, Defendant Franklin Collection Service, Inc. ("Defendant Franklin") began calling the telephone number (XXX) XXX-4556.[2]

3.      Defendant Franklin stopped calling the telephone number (XXX) XXX-4556 on or about March 6, 2009.[3]

4.      Said telephone number (XXX) XXX-4556 is a residential home telephone number belonging to Ms. Meadows who pays and has paid the phone bill for use of said telephone number since approximately the end of April 2006 or the beginning of May 2006.[4]

5.      At the time of these said phone calls and messages, Ms. Meadows did not owe any debt(s) to Franklin that was the subject of any calls or messages at

---

[1]Joint Status Report previously submitted to this Court, Document No. 83.

[2]It is undisputed that these calls were made from October 27, 2006 forward, see Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G. However, at trial Ms. Meadows will evidence that the calls actually began in approximately May 2006.  See Meadows Dep, 69:20 - 70:15; 72:16-22; 44:21 - 45:5; 81:22 - 82:4; 193:7 - 194:1, Nov. 10. 2009, Plaintiff's Third Evidentiary Submission Exhibit E.

[3]Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G.

[4]Meadows Dep. 28:3-16, Plaintiff's Third Evidentiary Submission Exhibit E; McClain Dep. 183:7 - 184:7, Sept. 23, 2009, Plaintiff's Second Evidentiary Submission Exhibit B.

issue in the instant action and directed directly toward Ms. Meadows at the telephone number (XXX) XXX-4556.[5]

6.     Also, Ms. Meadows was not a current customer of Defendant Franklin, nor had she conducted any business with Defendant Franklin within 18 months before Defendant Franklin began calling her.[6]

7.     Further, Ms. Meadows did not give express consent to Defendant Franklin to call her.[7]  Rather, on numerous occasions Ms. Meadows requested that Defendant Franklin stop calling her residential phone number.[8]

8.     Additionally, during at least four[9] of the occasions wherein Ms. Meadows talked to a representative of Defendant Franklin, Ms. Meadows informed Defendant Franklin that she was not the individual(s) they were seeking.[10]  On

---

[5]Meadows Dep. 40:5-9; 206:2-12, Plaintiff's Third Evidentiary Submission Exhibit E; McClain Dep. 137: 8-17, Plaintiff's Second Evidentiary Submission Exhibit B; see also Joint Status Report previously submitted to this Court, Document No. 83.

[6]Meadows Dep. 40:5-9; 206:2-12, Plaintiff's Third Evidentiary Submission Exhibit E.

[7]See Meadows Dep. 190:18 - 191:11; 206:2-5, Plaintiff's Third Evidentiary Submission Exhibit E; Transcripts of Defendant Franklin's Recordings dated October 20, 2008, October 21, 2008, October 22, 2008 and March 6, 2009, Plaintiff's Third Evidentiary Submission Exhibit F.

[8]Meadows Dep. 200:21 - 201:8; 206:2-5 Plaintiff's Third Evidentiary Submission Exhibit E; See Transcripts of Defendant Franklin's Recordings, Plaintiff's Third Evidentiary Submission Exhibit F.

[9]See Meadows Dep. 92:4-14; 98:21 - 99:3; 103:19 - 104:5; 106:11-16; 131:1-11; 200:6 - 201:8, Plaintiff's Third Evidentiary Submission Exhibit E; Although Ms. Meadows asserts that she told Defendant Franklin more than four times that she was not the individual(s) they were seeking, Defendant Franklin's recorded phone conversations evidence four occasions wherein Ms. Meadows discussed this with Defendant Franklin.

[10]Transcripts of Defendant Franklin's Recordings dated October 20, 2008, October 21, 2008, October 22, 2008 and March 6, 2009, Plaintiff's Third Evidentiary Submission Exhibit F.

at least two[11] of the occasions wherein Ms. Meadows talked to a representative of Defendant Franklin, Ms. Meadows informed Defendant Franklin that her telephone number was not that of the person or person(s) they were seeking.[12]

9.    During several of the conversations between Ms. Meadows and Defendant Franklin, Defendant Franklin requested information from Ms. Meadows regarding the individuals named Carol Tidmore, Neal Tidmore and/or Elizabeth Taylor.[13]

10.   During the time Defendant Franklin called Ms. Meadows' residential phone number, Ms. Meadows told Defendant Franklin that (a) she did not know the Tidmores; (b) she did not know or would not give out contact information for her daughter, Ms. Taylor; or (c)  Ms. Taylor did not live with her at that time.[14]  In any event, Ms. Meadows did not owe any debt(s) which they were

---

[11]See Meadows Dep. 92:4-14; 98:21 - 99:3; 103:19 - 104:5; 106:11-16; 131:1-11, 200:6 - 201:8, Plaintiff's Third Evidentiary Submission Exhibit E; Although Ms. Meadows asserts that she told Defendant Franklin more than two times that they had the wrong telephone number for the individual(s) they were seeking, Defendant Franklin's recorded phone conversations evidence two occasions wherein Ms. Meadows discussed this with Defendant Franklin.

[12]Transcripts of Defendant Franklin's Recordings dated October 20, 2008 and March 6, 2009, Plaintiff's Third Evidentiary Submission Exhibit F.

[13]See Meadows Dep. 174:3-9; 204:16 - 205:1, Plaintiff's Third Evidentiary Submission Exhibit E; Transcripts of Defendant Franklin's Recordings dated October 20, 2008, October 21, 2008, October 22, 2008 and March 6, 2009, Plaintiff's Third Evidentiary Submission  Exhibit F.

[14] See Meadows Dep. 92:4-14; 98:21 - 99:3; 103:19 - 104:5; 106:11-16; 125:3-10; 130:1-11, Plaintiff's Third Evidentiary Submission Exhibit E; Transcripts of Defendant Franklin's Recordings dated October 20, 2008, October 21, 2008, October 22, 2008 and March 6, 2009 Plaintiff's Third Evidentiary Submission  Exhibit F.

attempting to collect.[15]

11.    However, Defendant Franklin continued to call Ms. Meadows' phone number, (XXX) XXX-4556, despite the fact that Ms. Meadows, as the owner of that phone number, informed Defendant Franklin she was a non-debtor and asked Defendant Franklin not to call.[16]

12.    In continuing to call Ms. Meadows, Defendant Franklin placed Ms. Meadows' phone number, (XXX) XXX-4556, in its automated dialer, where Ms. Meadows' phone number could be dialed continuously, without human interaction, according to pre-set criteria.[17]

13.    **Defendant Franklin utilized and delivered pre-recorded message(s) to Ms. Meadows' residential telephone number.[18]**

14.    Defendant Franklin initiated 131 calls to Ms. Meadows' residential phone number, (XXX) XXX-4556, labeled as "A.C. CLD AND LFT MSG" in

---

[15]Meadows Dep. 40:5-9; 206:2-12, Plaintiff's Third Evidentiary Submission Exhibit E; McClain Dep. 137: 8-17, Plaintiff's Second Evidentiary Submission Exhibit B.

[16]See Transcripts of Defendant Franklin's Recordings, Plaintiff's Third Evidentiary Submission Exhibit F; Meadows Dep. 206:2-12, Plaintiff's Third Evidentiary Submission E; Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G; see McClain Dep. 85:11-17, Plaintiff's Second Evidentiary Submission Exhibit B (stating that a person's phone number remains in the automated dialer until Franklin is told three separate times that it is a wrong number).

[17]McClain Dep. 85:11-17; 49:19 - 50:1; 94:25 - 95:24, Plaintiff's Second Evidentiary Submission Exhibit B.

[18]Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G; Meadows Dep. 101:5-18; 198:4 - 199:18, Plaintiff's Third Evidentiary Submission E; McClain Dep. 131:5-8; 131:12 - 132:9; 170:14-22, Plaintiff's Second Evidentiary Submission B; see also Joint Status Report previously submitted to this Court, Document No. 83.

Defendant Franklin's account notes.[19]

15.   Defendant Franklin initiated 39 calls to Ms. Meadows' residential phone number, (XXX) XXX-4556, labeled as "G.C." with the corresponding date and time in Defendant Franklin's account notes.[20]

16.   Defendant Franklin initiated 31 calls to Ms. Meadows' residential phone number, (XXX) XXX-4556, labeled as "A.C. CLD  NO MSG LFT" in Defendant Franklin's account notes.[21]

17.   Defendant Franklin initiated 20 calls to Ms. Meadows' residential phone number, (XXX) XXX-4556, labeled as "DLR CLD HM#/NO ANS" in Defendant Franklin's account notes[22].

18.   Defendant Franklin initiated 15 calls to Ms. Meadows' residential phone number, (XXX) XXX-4556, labeled as "DLR CLD NETWRK REJCT" in Defendant Franklin's account notes.[23]

19.   Defendant Franklin initiated 13 calls to Ms. Meadows' residential phone

---

[19]Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G.

[20]Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G.

[21]Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G.

[22]Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G.

[23]Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G.

number, (XXX) XXX-4556, labeled as "No Answer" in Defendant Franklin's account notes.[24]

20.    Defendant Franklin initiated nine (9) calls to Ms. Meadows' residential phone number, (XXX) XXX-4556, labeled as "No Phones" in Defendant Franklin's account notes.[25]

21.    Defendant Franklin initiated six (6) calls to Ms. Meadows' residential phone number, (XXX) XXX-4556, labeled as "A.C. CALLED AND LEFT MSG" in Defendant Franklin's account notes.[26]

22.    Defendant Franklin initiated six (6) calls to Ms. Meadows' residential phone number, (XXX) XXX-4556, labeled as "TEL RES NO ANSWER" in Defendant four (4) calls to Ms. Meadows' labeled as "DLR CLD HM #/TRANSFRD" in Defendant Franklin's account notes.[27]

23.    Defendant Franklin initiated three (3) calls to Ms. Meadows' residential phone number, (XXX) XXX-4556, labeled as "DLR CLD HM #/BUSY" in

---

[24]Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G.

[25]Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G.

[26]Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G.

[27]Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G.

Defendant Franklin's account notes.[28]

24.   Defendant Franklin initiated two (2) calls to Ms. Meadows' residential phone number, (XXX) XXX-4556, labeled as "LFT MSG ON MACHINE" in Defendant Franklin's account notes.[29]

25.   Defendant Franklin initiated two (2) calls to Ms. Meadows' residential phone number, (XXX) XXX-4556, labeled as "LFT MESS/3RD PARTY" in Defendant Franklin's account notes.[30]

26.   Defendant Franklin initiated one (1) call to Ms. Meadows' residential phone number, (XXX) XXX-4556, labeled as "Invalid Home Phone" in Defendant Franklin's account notes.[31]

27.   Defendant Franklin initiated one (1) call to Ms. Meadows' residential phone number, (XXX) XXX-4556, labeled as "Phone # Confirmation" in Defendant Franklin's account notes.[32]

28.   Defendant Franklin initiated one (1) call to Ms. Meadows' residential phone

---

[28]Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G.

[29]Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G.

[30]Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G.

[31]Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G.

[32]Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G.

number, (XXX) XXX-4556, labeled as "HME #/TRANSFR COLLCTR" in Defendant Franklin's account notes.[33]

29.   Defendant Franklin initiated one (1) call to Ms. Meadows' residential phone number, (XXX) XXX-4556, labeled as "LEFT MSG - INCOMPLETE" in Defendant Franklin's account notes.[34]

30.   Defendant Franklin initiated one (1) call to Ms. Meadows' residential phone number, (XXX) XXX-4556, labeled as "Phone # Not Confirmed" in Defendant Franklin's account notes.[35]

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law."[36]   On a motion for summary judgment, the court construes the evidence and factual inferences in the light most favorable to the nonmoving party.[37]   However, after the movant has put forth support for summary judgment, the burden shifts and the adverse party "must set forth specific

---

[33]Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G.

[34]Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G.

[35]Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G.

[36]FED. R. CIV. P. 56(c).

[37]Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

facts showing that there is a genuine issue for trial."[38]  According to the United States

Supreme Court, "the plain language of Rule 56(c) mandates the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial."[39]

### III. ARGUMENT

**A.  Defendant Franklin is Subject to the Regulations and Prohibitions of the TCPA Based on its Conduct with Ms. Meadows.**

Partial Summary Judgment is appropriate in this case because no genuine issues of

material facts exist concerning Defendant Franklin's subjection to the regulations and

prohibitions of the Telephone Consumer Protection Act ("TCPA") with regard to its

conduct toward Ms. Meadows.

The TCPA prohibits "initiat[ion] [of] any telephone call to any residential telephone

line using an artificial or prerecorded voice to deliver a message" as well as making more

than one telephone solicitation call to the same person within a twelve month period.[40]  A

company is exempt from the TCPA (1) if they have an existing business relationship with

the called party; (2) if the called party expressly gave permission for the company to call;

or (3) if the call(s) are not made for commercial purposes and do not adversely affect the

---

[38]FED. R. CIV. P. 56(e).

[39]Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)).

[40]47 C.F.R. §§ 227(b)(1)(B); (c)(5).

privacy rights of the called party or send an unsolicited advertisement.[41]

According to Black's Law Dictionary, "initiate" means to "[c]ommence; start; originate."[42]  Thus, simply causing a telephone to ring constitutes an "initiated" call; there is no need that the call be answered.  Despite Ms. Meadows' status as a non-debtor and despite informing Defendant Franklin of this status, Defendant Franklin continued to initiate calls to Ms. Meadows.[43]  Defendant Franklin initiated several telephone calls to Ms. Meadows' residential telephone line using an artificial/prerecorded voice to deliver message(s).[44]  Also, Defendant Franklin initiated more than one telephone solicitation call to Ms. Meadows within a twelve month period and, in fact, initiated several solicitation calls to Ms. Meadows.[45]  Further, as discussed below, none of the TCPA exemptions apply in the instant action and, thus, partial summary judgment is due to be granted in favor of

---

[41]See 47 C.F.R. § 227(b)(2)(B); 47 C.F.R. § 64.1200(a)(2)(iv); see also, In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 F.C.C.R. 8752, ¶ 34 (1992).

[42]Black's Law Dictionary 784 (6th ed. 1992).

[43]Meadows Dep. 40:5-9; 206:2-12, Plaintiff's Third Evidentiary Submission Exhibit E; McClain Dep. 85:11-17; 137: 8-17, Plaintiff's Second Evidentiary Submission Exhibit B; Transcripts of Defendant Franklin's Recordings, Plaintiff's Third Evidentiary Submission Exhibit F;  Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G; see also Joint Status Report previously submitted to this Court, Document No. 83

[44]Meadows Dep. 101:5-18; 198:4 - 199:18, Plaintiff's Third Evidentiary Submission E; McClain Dep. 131:5-8; 131:12 - 132:9; 170:14-22, Plaintiff's Second Evidentiary Submission B; Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G; see also Joint Status Report previously submitted to this Court, Document No. 83.

[45]See Meadows Dep. 174:3-9; 204:16 - 205:1; 206:2-12, Plaintiff's Third Evidentiary Submission Exhibit E; McClain Dep. 85:11-17, Plaintiff's Second Evidentiary Submission Exhibit B; Transcripts of Defendant Franklin's Recordings, Plaintiff's Third Evidentiary Submission Exhibit F; Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G; see also section below discussing telephone solicitations.

Ms. Meadows and her assertion that Defendant Franklin is subject to the regulations and prohibitions of the TCPA under the particular facts of this case.

1. <u>Each and every call Defendant made to Ms. Meadows adversely affected the privacy rights of Ms. Meadows.</u>

The prohibitions of the TCPA do not apply to residential calls made for a commercial purpose that do not adversely affect the privacy rights of the called party.[46]  The Federal Communications Commission ("FCC")[47] has previously indicated that calls regarding debt collection are commercial in nature.[48]  This is further supported by the Black's Law Dictionary definition of a commercial activity as "any type of business or activity which is carried on for a profit."[49]  However, it is the second part of this exemption–the adverse affect on privacy rights–which makes the TCPA applicable to Defendant Franklin's calls and/or messages to Ms. Meadows.

The TCPA was enacted, in part, to prohibit and/or regulate "automated or prerecorded calls [which] are a nuisance and an invasion of privacy."[50]  **As**

---

[46]47 C.F.R. § 227(b)(2)(B)(ii).

[47]The FCC was given power to promulgate regulations implementing the TCPA.  <u>See</u> 47 C.F.R. § 227(b)(2) and (c)(1).

[48]<u>In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991</u>, 7 F.C.C.R. 8752, 8773 (1992).

[49]Black's Law Dictionary 270 (6th ed., West 1992).

[50]Pub. L. 102-243, Section 2 (1991).

**previously discussed,[51] despite multiple requests that Defendant Franklin stop calling Ms. Meadows since she did not owe the debt(s) in question, Defendant Franklin** placed her in an automated dialer which called and left messages on a continuous basis.[52]  This repeated and unwanted contact adversely affected Ms. Meadows' privacy and is precisely the kind of behavior the TCPA sought to prevent. The legislative history of the TCPA supports this contention, indicating that these "'[c]omputerized calls are the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall . . . [O]wning a telephone does not give the world the right and privilege to assault the consumer with machine-generated telephone calls.'"[53]

　　　As noted by the FCC, a person actually owing a debt would have an existing business relationship in place and as a result, calls to that debtor would be less of an invasion of privacy.[54]  However, on a set of facts very similar to those of the instant

---

[51]See Statement of Undisputed Facts, above.

[52]McClain Dep. 85:11-17; 94:25 - 95:24; 131:5-8; 131:12 - 132:9 Plaintiff's Second Evidentiary Submission Exhibit B.

[53]In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC 02-250, § II, ¶ 24 (2002) (quoting 137 Cong. Rec. S9874 (July 8, 1991) (statement of Sen. Hollings)).

[54]See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 F.C.C.R. 8752, 8773 (1992) (noting the view that debtors have given prior express consent to debt collection calls by incurring a debt and thus reasoning that debt collection calls "are adequately covered by exemptions . . . for established business relationships" as calls to persons with established business relationships would not affect privacy rights).

action, the court in <u>Watson v. NCO Group, Inc.</u> recently discussed this issue of TCPA *non-debtor* privacy rights.[55]  The plaintiff in <u>Watson</u> received hundreds of prerecorded or automated calls from the defendant debt collector, despite owing no debt to the defendant.[56]   In discussing whether the plaintiff's privacy rights were adversely affected such that the TCPA would apply to the defendant's conduct, the court observed that "a non-debtor's [privacy] rights are in fact violated when he is subjected to repeated annoying and abusive debt collection calls that he remains powerless to stop."[57]  Conversely, "by virtue of staying out of debt, a non-debtor has vastly greater privacy rights than someone who has fallen into debt" and, thus, a non-debtor receiving collection calls would have a heightened level of privacy.[58]

Although the court in <u>Watson</u> recognized that the TCPA was primarily directed at abusive telemarketing practices, the court stated it "cannot conclude that the TCPA excludes regulation of other types of calls."[59]  This is especially true when the similarities between telemarketing calls and debt collection calls to a non-debtors are considered: both types of calls invade the privacy of the called party and both types of calls involve the same annoying, unwanted, harassing communications

---

[55]<u>Watson</u>, 462 F. Supp. 2d at 644.

[56]<u>Id.</u> at 643.

[57]<u>Id.</u>

[58]<u>Id.</u> at 644.

[59] <u>Id.</u> at 645.

regarding a matter which the called party has no knowledge of, no interest in and is often unable to stop.  Although Defendant Franklin was aware Ms. Meadows did not owe any debt and was not who it was looking for, it continued to call Ms. Meadows and utilize prerecorded messages despite Ms. Meadows' pleas that the calls stop.[60] Thus, the TCPA is applicable in the instant action and Defendant Franklin is not exempt from its reach.

2.    <u>Defendant Franklin engaged in telephone solicitation with respect to the calls made to Ms. Meadows, a non-debtor</u>.

As previously discussed, Ms. Meadows does not owe the debt(s) on which Defendant was calling to collect.[61]  As a non-debtor, Ms. Meadows is entitled to an enhanced level of privacy with regard to calls made for debt collection purposes. Consequently, the calls to Ms. Meadows, despite her statement that she did not owe any debt(s), represent telephone solicitations made by Defendant Franklin.

The Fair Debt Collection Practices Act ("FDCPA") prohibits debt collectors from communicating with non-debtors except to "acquir[e] location information" about the debtor and, even then, the FDCPA permits only *one* communication with

---

[60]Meadows Dep. 40:5-9; 92:4-14; 98:21 - 99:3; 103:19 - 104:5; 106:11-16; 125:3-10; 130:1-11; 206:2-12, Plaintiff's Third Evidentiary Submission Exhibit E; McClain Dep. 85:11-17; 137: 8-17, Plaintiff's Second Evidentiary Submission Exhibit B; <u>see also</u>, Transcripts of Defendant Franklin's Recordings, Plaintiff's Third Evidentiary Submission Exhibit F; Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G;  Joint Status Report previously submitted to this Court, Document No. 83.

[61]Meadows Dep. 40:5-9; 206:2-12, Plaintiff's Third Evidentiary Submission Exhibit E; McClain Dep. 137: 8-17, Plaintiff's Second Evidentiary Submission Exhibit B.

14

the non-debtor.[62]  However, despite Ms. Meadows' statements that she was not the

debtor and that she did not know or did not wish to provide location information,

Defendant Franklin continuously called Ms. Meadows.[63]  A debt collector is not

allowed to use a non-debtor as its personal messenger service.  Thus, assuming

*arguendo* that Defendant Franklin was permitted to contact Ms. Meadows one time

in an attempt to obtain location information on the true debtor, each and every

contact after the first one was prohibited.  *A fortiori*, each and every contact after the

first one was a telephone solicitation.

The TCPA defines a telephone solicitation as "the initiation of a telephone

call or message for the purpose of encouraging the purchase [of] or investment in . . .

services, which is transmitted to any person."[64]  According to Black's Law

Dictionary, "initiate" means to "[c]ommence; start; originate."[65]  Additionally, the

term "solicit" is defined to mean "[t]o appeal for something . . . to ask for the

purpose of receiving . . . to try to obtain."[66]  In the instant action, the continuous

series of phone calls and/or messages initiated by Defendant to Ms. Meadows, a

---

[62]15 U.S.C. 1692b & 1692c(a)(b).

[63]See Meadows Dep. 40:5-9; 92:4-14; 98:21 - 99:3; 103:19 - 104:5; 106:11-16; 125:3-10; 130:1-11; 206:2-12, Plaintiff's Third Evidentiary Submission Exhibit E; McClain Dep. 85:11-17; 137: 8-17, Plaintiff's Second Evidentiary Submission Exhibit B; see also, Transcripts of Defendant Franklin's Recordings, Plaintiff's Third Evidentiary Submission  Exhibit F; Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G.

[64]47 C.F.R. § 227(a)(4).

[65]Black's Law Dictionary 784 (6th ed. 1992).

[66]Black's Law Dictionary 1234 (6th ed. 1992).

non-debtor, were solicitations.  In its numerous calls to Ms. Meadows, Defendant

Franklin solicited her for information about the real debtor(s) and solicited her to

leave messages for the real debtor(s).[67]

Additionally, Defendant Franklin's solicitations to Ms. Meadows essentially

requested or encouraged a purchase on her behalf.  Black's Law Dictionary defines

the term "purchase" as "[t]o own by paying or by promising to pay an agreed price

which is enforceable at law."[68]  Similarly, the word "buy" is defined by Black's Law

Dictionary as "to acquire by the payment of a price or value."  Additionally, Black's

Law Dictionary defines "services" as "things purchased . . . that do not have

physical characteristics."[69]  As discussed above, Ms. Meadows informed Defendant

Franklin that she did not owe any debt and that she did not know or did not wish to

provide information on the true debtor(s).[70]  However, Defendant Franklin continued

to call Ms. Meadows, implying and proving by practice that without said

information or payment of the debt(s), Defendant would continue to call Ms.

Meadows.  Consequently, Defendant Franklin's solicitation of Ms. Meadows

--------

[67]See Meadows Dep. 174:3-9; 204:16 - 205:1, Plaintiff's Third Evidentiary Submission
Exhibit E; Transcripts of Defendant Franklin's Recordings, Plaintiff's Third Evidentiary
Submission  Exhibit F.

[68]Black's Law Dictionary 200 (6th ed. 1992).

[69]Black's Law Dictionary 1369 (6th ed. 1992).

[70]See Meadows Dep. 92:4-14; 98:21 - 99:3; 103:19 - 104:5; 106:11-16; 125:3-10; 130:1-
11, Plaintiff's Third Evidentiary Submission Exhibit E;  Transcripts of Defendant Franklin's
Recordings, Plaintiff's Third Evidentiary Submission  Exhibit F.

essentially requested that she purchase her privacy and her peace.

Furthermore, as a non-debtor, Ms. Meadows was not required to provide Defendant Franklin with any information, assist Defendant Franklin in collection, or pay the alleged debt(s).  Nonetheless, by persistently calling Ms. Meadows and by requesting her to pass along a message or ask the true debtor to call, Defendant Franklin was in effect, encouraging Ms. Meadows to invest in its provided service of debt collection,[71] implying that in return, the calls to Ms. Meadows would stop. Thus, Defendant Franklin's conduct is governed by the TCPA; after the initial communication, each and every telephone call made to Ms. Meadows, a non-debtor, was a telephone solicitation subject to the prohibitions of the TCPA.

The TCPA does exempt from the definition of telephone solicitation, calls or messages to people who have given prior express consent to receive a solicitation or with whom the caller has an established business relationship.[72]  However, as explained below, Ms. Meadows neither gave Defendant Franklin express consent to call her, nor did she have an established business relationship with Defendant.[73]

---

[71]It is interesting to note that Defendant Franklin itself admits to providing "services," i.e., online payment, Quick Collect, "Pay Anytime Line," mail and phone collection services, skiptracing services, going to court, reporting to credit bureaus, providing drive-through payment options, etc.  http://www.franklinservice.com/services.html.

[72]47 C.F.R. § 227(a)(4)(A) and (B).

[73]See Meadows Dep. 190:18 - 191:11; 200:21 - 201:8; 206:2-5, Plaintiff's Third Evidentiary Submission Exhibit E; Transcripts of Defendant Franklin's Recordings, Plaintiff's Third Evidentiary Submission  Exhibit F; see also, section below entitled "Ms. Meadows had no Existing Business Relationship with Defendant Franklin." and evidentiary and legal citations included therein.

Additionally, it is notable that the FCC has exempted calls made on behalf of non-profit and/or tax exempt organizations from the purview of the term "solicitation" and the accompanying TCPA regulations.[74]  Thus, it is a reasonable inference that by specifically exempting companies which do not operate for profit, the FCC's regulations on unwanted telemarketing or solicitations apply more readily to companies such as Defendant Franklin who operate for profit and/or whose business nature involves obtaining money from consumers.

Furthermore, the TCPA prohibits the same company from making more than one telephone solicitation call to a person within a twelve month period.[75]  As previously discussed, Ms. Meadows specifically requested that Defendant Franklin stop calling her.[76]  After Ms. Meadows made this company specific do-not-call request[77] however, Defendant Franklin continued to call Ms. Meadows.[78]  Thus, each

---

[74]In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, 14070 (2003).

[75]47 C.F.R. § 227(c)(5); ; In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC 05-28, ¶ 20 (2005) (citing In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, 14067, ¶ 90 (2003)); see also 47 C.F.R. §§ 64.1200(d)(6) and (f)(7) & (9).

[76]Meadows Dep. 200:21 - 201:8; 206:2-5 Plaintiff's Third Evidentiary Submission Exhibit E.

[77]See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Second Order on Reconsideration, FCC 05-28, ¶ 21 (2005); see also 47 C.F.R. § 64.1200(d)(3).

[78]Meadows Dep. 206:2-12, Plaintiff's Third Evidentiary Submission E; McClain Dep. 85:11-17, Plaintiff's Second Evidentiary Submission Exhibit B; see also, Transcripts of Defendant Franklin's Recordings, Plaintiff's Third Evidentiary Submission Exhibit F; Defendant Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G.

time that Defendant Franklin called Ms. Meadows after she initially requested that

Defendant Franklin stop calling her was a violation of the TCPA.[79]

3.     Ms. Meadows had no Existing Business Relationship with Defendant

Franklin.

The prohibitions of the TCPA do not apply to persons with whom a caller has

an existing business relationship.[80]  Defendant Franklin bears the burden of proving

the existence of any established business relationship with Ms. Meadows by "clear

and convincing evidence."[81]  As used in the TCPA, the term "established business

relationship" means,

> a prior or existing relationship formed by a voluntary two-way
> communication between a person or entity and a residential subscriber .
> . . on the basis of the subscriber's purchase or transaction with the entity
> within the eighteen (18) months immediately preceding the date of the
> telephone call or on the basis of the subscriber's inquiry or application .
> . . within the three months immediately preceding the date of the call,
> which relationship has not been previously terminated by either party.[82]

Also, the FCC has clarified that companies cannot transfer established business

relationships.[83]  Having an established business relationship with one customer,

---

[79]47 C.F.R. § 227(c)(5).

[80]See 47 C.F.R. §§ 227(b)(1)(B) and (b)(2)(b); 47 C.F.R. § 64.1200(a)(2)(iv);16 C.F.R. § 310.4(b)(1)(iii)(B)(*i*), (*ii*)).

[81]In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C.R. 14014, 14079 (2003).

[82]47 C.F.R. § 64.1200(f)(3).

[83]See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C.R. 14014, 14083 (2003).

person or client "does not permit companies to make calls based on referrals from existing customers and clients, as the person referred presumably does not have the required business relationship with the company that received the referral."[84]

Based on the facts in the instant action, Ms. Meadows had no previous relationship with Defendant Franklin that could be construed as an existing business relationship under the TCPA.  Ms. Meadows was not a current customer of Defendant Franklin, nor had she conducted any business with Defendant Franklin within 18 months before Defendant Franklin began calling her.[85]  In fact, during the relevant time period, Defendant Franklin was not even contacting Ms. Meadows to reach her specifically or concerning any debt alleged to be owed by her.[86] Consequently, Defendant Franklin cannot prove an established business relationship with Ms. Meadows by "clear and convincing evidence"[87] and any corresponding exemption from the TCPA is inapplicable in the instant action.

Furthermore, even assuming *arguendo* that Defendant Franklin could prove an established business relationship with Ms. Meadows by clear and convincing evidence, said business relationship was terminated by Ms. Meadows.  In providing

---

[84]In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C.R. 14014, 14083 (2003).

[85]Meadows Dep. 40:5-9; 206:2-12, Plaintiff's Third Evidentiary Submission Exhibit E.

[86]See Meadows Dep. 40:5-9; 206:2-12, Plaintiff's Evidentiary Submission Exhibit E; McClain Dep. 137: 8-17, Plaintiff's Evidentiary Submission Exhibit B.

[87]Watson, 462 F. Supp. 2d at 644; In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C.R. 14014, 14079 (2003).

maximum protection to consumers, the FCC has clarified that when calls /messages

are unwanted, even an established business relationship can be terminated upon the

consumer's request.[88]   Thus, any existing established business relationship with

Defendant Franklin was terminated upon Ms. Meadows' first request that Defendant

Franklin stop calling her.

4.      Ms. Meadows did not give Defendant Franklin express authorization to

call her.

Additionally, the prohibitions of the TCPA do not apply to persons who have

given prior express consent to be called.[89]   The TCPA contemplates that such prior

express consent may be "evidenced by a signed, written agreement" between the two

parties, wherein the called party provides his or her telephone number and gives

express consent to be contacted by a specific entity at that provided telephone

number.[90]   Further, Black's Law Dictionary defines "express" as "clear; definite;

explicit . . . [d]eclared in terms; set forth in words; . . . [m]ade known distinctly and

---

[88]47 C.F.R. § 64.1200(f)(3)(i); see also, In the Matter of Rules and Regulations
Implementing the Telephone Consumer Protection Act of 1991, Second Order on
Reconsideration, FCC 05-28, ¶ 24 (2005) (explaining the FCC's view that a consumer can
terminate an established business relationship at-will); see also In the Matter of Rules and
Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C.R. 14014,
14079-079 (2003) (noting in a footnote that although a debtor may not terminate an established
business relationship with his/her creditor, other persons could).

[89]See 47 C.F.R. §§ 227(b)(1)(B); 47 C.F.R. § 64.1200(f)(9)(i).

[90]See 47 C.F.R. §64.1200(c)(2)(ii).

explicitly, and not left to inference."[91]  Thus, to qualify under this exemption from

the TCPA, Defendant Franklin must essentially show (1) express consent–not

inferred, implied, or imagined; (2) given by Ms. Meadows herself (3) to Defendant

Franklin; (3) prior to the start of the continuous phone calls Defendant Franklin

made to Ms. Meadows; and (4) permitting Defendant Franklin to contact her about

the debt(s) which they were attempting to collect.

However, Defendant Franklin cannot show any of the foregoing because, as

she testified, Ms. Meadows did not give Defendant Franklin prior express consent or

any other consent to contact her.[92]  In fact, Ms. Meadows indicated her status as a

non-debtor to Defendant Franklin on several occasions and requested Defendant

Franklin stop calling.[93]  Based on Ms. Meadows' testimony, Defendant had no prior

express consent from Ms. Meadows to contact her regarding the debt(s) of other

people and, thus, any corresponding exemption from the TCPA is inapplicable in the

instant action.

**B.     Defendant Franklin is not exempt from the TCPA based on its status as a debt collector.**

In spite of the foregoing, Defendant Franklin still appears to believe they are not

subject to the regulations or prohibitions of the TCPA, perhaps because they make calls in

---

[91]Black's Law Dictionary 580 (6th ed., West 1992).

[92]Meadows Dep. 206:2-5, Plaintiff's Third Evidentiary Submission Exhibit E.

[93]Meadows Dep. 206:2-12, Plaintiff's Third Evidentiary Submission Exhibit E.

connection with debt collection.[94]  While the FCC *has* stated that "all debt collection circumstances involve a prior or existing business relationship," the FCC has **not** created an express exemption from the TCPA for debt collection calls.[95]  Instead, the FCC has simply indicated that calls to *debtors* are included under the TCPA exemptions for commercial calls which do not adversely affect privacy rights as well as exemptions for calls based on established business relationships.[96]  The FCC has not specifically addressed the situation which occurred in the instant action concerning "erroneous debt collection calls" made to a non-debtor.[97]  Rather, in making the statement that debt collection calls involve existing business relationship(s), it appears that the FCC presumes that debt collection calls are made only to *debtors*.[98]

However, in the instant action, Defendant Franklin's conduct falls outside any debt collector protection provided by the FCC.  As previously discussed, Defendant Franklin made numerous calls to a non-debtor—Ms. Meadows—who did not owe the debt(s) which

---

[94]McClain Dep. 69:16-20; 109:23 - 110:18, Plaintiff's Second Evidentiary Submission Exhibit B.

[95]In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 F.C.C.R. 8752, 8771-772 (1992).

[96]Id. at 8773.

[97]Watson v. NCO Group, Inc., 462 F. Supp. 2d 641, 644 (E.D. Pa. 2006).

[98]See id., at 644 (stating that "[s]ince an erroneously called non-debtor has no such existing business relationship," the purview of the FCC's exemption for debt collection calls does not extend to calls made to non-debtors).

Defendant Franklin was trying to collect.[99]  Furthermore, as discussed above, Ms.

Meadows did not have any established business relationship with Defendant Franklin, nor

did she give Defendant Franklin prior express consent to contact her.  Ms. Meadows

indicated her status as a non-debtor to Defendant Franklin on several occasions and

requested that Defendant Franklin stop calling.[100]   Thus, Ms. Meadows was an

"erroneously called non-debtor."[101]  The <u>Watson</u> case held that this type of conduct by a

defendant debt collector–i.e, repeated automated calls and /or messages to the phone

number of a non-debtor–was subject to the prohibitions of the TCPA.[102]  Likewise,

Defendant Franklin's conduct of continuously calling Ms. Meadows regarding debts she

did not owe and requesting she purchase her privacy and peace by providing Defendant

Franklin with information, assisting Defendant Franklin in locating people, passing along

information to the true debtor, and so on, falls outside any FCC protection and inside the

range of prohibited actions which the TCPA was enacted to protect against.

## IV. CONCLUSION

Based on its conduct toward Ms. Meadows, a non-debtor, Defendant Franklin is

subject to the regulations and prohibitions of the TCPA.  As discussed above, there are no

---

[99]Defendant Franklin's Account Notes, Plaintiff's Third Evidentiary Submission Exhibit F; McClain Dep. 137: 8-17, Plaintiff's Second Evidentiary Submission Exhibit B; Meadows Dep. 198:23 - 199:10; 206:6-12, Plaintiff's Third Evidentiary Submission Exhibit E.

[100]<u>See</u> 47 C.F.R. § 227(b)(1)(B); Meadows Dep. 206:2-12, Plaintiff's Third Evidentiary Submission Exhibit E.

[101]<u>Watson</u> 462 F. Supp. 2d at 644.

[102]<u>Id.</u> at 644-45.

genuine issues of material fact concerning Defendant Franklin's lack of established business relationship with Ms. Meadows.  As discussed above, there are no genuine issues of material fact concerning Defendant Franklin's lack of prior express consent from Ms. Meadows to contact Ms. Meadows about the debt(s) of other people.  As discussed above, there are no genuine issues of material fact concerning the adverse affect Defendant Franklin's conduct had on Ms. Meadows' privacy considering her status as a non-debtor and the volume of calls and /or messages made by Defendant Franklin.  As discussed above, there are no genuine issues of material fact concerning whether or not Defendant Franklin's actions toward Ms. Meadows, a non-debtor, were solicitations, considering the purpose behind the TCPA.  Thus, Ms. Meadows is entitled to a judgment as a matter of law and partial summary judgment should be granted in favor of Ms. Meadows and her assertion that Defendant Franklin is subject to the regulations and prohibitions of the TCPA in the instant action.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff moves this Court to GRANT partial summary judgment in favor of Plaintiff and find that Defendant Franklin's conduct is subject to the Regulations and Prohibitions of the Telephone Consumer Protection Act ("TCPA") under the particular facts of this case.

Done this _**24th**_day of _**March**_ , 2010.

Respectfully submitted,

*/s/ **Meredith L. Phillips***

_____

Meredith L. Phillips

Brandon L. Blankenship

Attorneys for Plaintiff

PHI 066 (ASB-3877-E35P)

Blankenship, Harrelson & Linton, L.L.C.

2001 Park Place North, Suite 825

Birmingham, AL 35203-2774

(205) 912-8241

Facsimile:   (205) 912-8253

Email:   meredith.phillips@bhlattorneys.com

brandon.blankenship@bhlattorneys.com

M11561

---

## CERTIFICATE OF SERVICE

---

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM-ECF system which will send notifications of such filings to:

John W. Scott, Esq.
Brent G. Grainger, Esq.
Scott Dukes & Geisler, P.C.
2100 3rd Avenue North, Suite 700
Birmingham, AL 35203

        Done this _**24th**_day of _**March**_ , 2010.

                                        Respectfully submitted,

                                        _/s/ **Meredith L. Phillips**_
                                        _____
                                                Meredith L. Phillips
                                                Brandon L. Blankenship
                                                Attorneys for Plaintiff
                                                PHI 066 (ASB-3877-E35P)
                                        Blankenship, Harrelson & Linton, L.L.C.
                                                2001 Park Place North, Suite 825
                                                Birmingham, AL 35203-2774
                                                        (205) 912-8241
                                                Facsimile:   (205) 912-8253
                                        Email:   meredith.phillips@bhlattorneys.com
                                                brandon.blankenship@bhlattorneys.com

M11561