FILED
2010 Apr-30  PM 12:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **ELIZABETH MEADOWS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** |
| | ) | **CV-09-CO-0605-W** |
| **FRANKLIN COLLECTION** | ) | |
| **SERVICE, INC., a corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## RESPONSE IN OPPOSITION TO PLAINTIFF'S FIRST AND SECOND MOTIONS FOR PARTIAL SUMMARY JUDGMENT

**COMES NOW** Defendant Franklin Collection Service, Inc. ("Franklin" or "Defendant") and submits the following Response in Opposition to Plaintiff's First and Second Motions for Partial Summary Judgment.

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FRANKLIN'S STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.    <u>Response To Plaintiff's Statement of Undisputed Facts In Plaintiffs First Motion for Summary Judgment Regarding Plaintiff's TCPA Claim</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.    <u>Response To Plaintiff's Statement of Undisputed Facts In Plaintiff's Second Motion for Summary Judgment Regarding the Bona Fide Error Defense</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    III.    <u>Franklin's Additional Undisputed Facts</u> . . . . . . . . . . . . . . . . . . . . . . . 21

ARGUMENT AND CITATION OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . 27

    A.    FRANKLIN IS NOT SUBJECT TO THE TCPA . . . . . . . . . . . . . . 27

        1.    <u>Franklin Did Not Call Plaintiff and Did Not "Affect Plaintiff's Privacy"</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

        2.    <u>Franklin Is Not A Telemarketer and Did Not Call Plaintiff</u> . 32

        3.    <u>Franklin Was Not Calling Plaintiff and Did Not Need An Established Business Relationship With Plaintiff To Call Taylor or the Tidmores</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

        4.    <u>Franklin Was Not Calling Plaintiff</u> . . . . . . . . . . . . . . . . . . . . 35

    B.    THE TCPA IS INAPPLICABLE TO THE FACTS AT ISSUE . . . 35

    C.    PLAINTIFF'S MOTION AS TO THE BONA FIDE ERROR DEFENSE IS DUE TO BE DENIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

1.   <u>Plaintiff's Argument That Franklin Intentionally Violated the FDCPA Is Fundamentally Unsound</u> . . . . . . . . . . . . . . . . . 39

2.   <u>Plaintiff's Argument Fails To Assert That An Error Was Made</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

3.   <u>Franklin Maintains Policies and Procedure Implemented To Avoid Violations of the FDCPA</u> . . . . . . . . . . . . . . . . . . . . . 41

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

## **INTRODUCTION**

As set forth in Franklin's Motion for Summary Judgment ("Franklin's Motion"), this case involves claims against Franklin, a debt collection agency, arising from Franklin's legitimate debt collection calls to telephone number (XXX) XXX-4556 in Franklin's effort to collect a number of different debts from three debtors who provided this telephone number as their contact number to their various creditors. (Doc. 95.) Plaintiff Elizabeth Meadows ("Plaintiff") makes various claims against Franklin for violations of the federal Fair Debt Collection Practices Act ("FDCPA") and the Telephone Consumer Protection Act ("TCPA"). Plaintiff filed separate motions for partial summary judgment pertaining to her TCPA claim (Plaintiff's "First Motion for Summary Judgment") (Doc. 88), and her assertion that Franklin should be denied the benefit of the bona fide error affirmative defense (Plaintiff's "Second Motion for Summary Judgment"). (Doc. 91). Pursuant to the Court's April 14, 2010 Order, Franklin addresses both motions for partial summary judgment herein. (Doc. 101.)

There are no genuine disputed material facts pertaining to Plaintiff's TCPA claim and the only issues before this Court as to that claim are legal in nature. As set out herein and in Franklin's Motion, Plaintiff's TCPA claim is due to be dismissed as a matter of law for failure to state a claim upon which relief can be granted.

1

Additionally, as set forth herein and in Franklin's Motion, Franklin did not violate any provision of the FDCPA and there has been no determination in this case that Franklin violated any provision of the FDCPA.  Thus, Plaintiff's motion for summary judgment pertaining to Franklin's alleged inability to assert the bona fide error defense is premature and in any event is due to be denied as being factually and legally unsustainable.

<u>**FRANKLIN'S STATEMENT OF FACTS**</u>

**I.**     <u>**Response To Plaintiff's Statement of Undisputed Facts In Plaintiff's First Motion for Summary Judgment Regarding Plaintiff's TCPA Claim**</u>

Because Plaintiff has set out a number of factually incorrect statements, Franklin is compelled to respond thereto herein.  However, few of the "facts" raised by Plaintiff in her TCPA motion for summary judgment have any relevance or bearing on the issue.

2.     Plaintiff's assertion is unsupported by the record.  Plaintiff's statement, however, is immaterial to the Court's determination that Plaintiff's TCPA claim is due to be dismissed as a matter of law.  An accurate recitation of the calls to (XXX) XXX-4556 is set forth in Franklin's Memorandum of Law in Support of Motion for Summary Judgment.  (Doc. 95 ¶¶ 22, 23.)

2

4.     Plaintiff's statement is an inaccurate representation of the record and contradicts her statement in the parties's Joint Status Report that Plaintiff obtained (XXX) XXX-4556 in May 2006. (Doc. 83 at 3.) Franklin also disputes this statement of fact to the extent Plaintiff's citation to the testimony of Sherri McClain is inapposite to the proposition for which it is cited.   Nonetheless, when Plaintiff obtained (XXX) XXX-4556 and Plaintiff's citation to inapposite testimony is immaterial to the Court's determination that Plaintiff's TCPA claim is due to be dismissed and her summary judgment motion denied as a matter of law.

5.     Plaintiff's statement is contrary to her testimony and Plaintiff's counsel's statements in the Joint Status Report.  Plaintiff testified she "knew the calls were not for me because I didn't owe anybody" (Doc. 95 at Ex. 1, Meadows Dep. 40:5-9), and that the calls to (XXX) XXX-4556 were for Taylor or the Tidmores.  (Meadows Dep. 72:3-7, 173:21-174:2).  The Joint Status Report sets out as Undisputed Material Facts that the telephone calls at issue concerned debts owed by Taylor or by the Tidmores and that Plaintiff did not owe any debt to Franklin that was the subject of any telephone calls at issue in this lawsuit.  (Doc. 83 at 3.)  Plaintiff's misrepresentation of the record is inappropriate and cannot support her motion for summary judgment.

6 - 7. Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part I,

3

Paragraph 5, *supra.*

8.     Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part I, Paragraph 5, *supra.*   Nonetheless, the transcripts submitted as Plaintiff's Third Evidentiary Submission at Exhibit F speak for themselves and Franklin does not dispute the accuracy of the transcripts.

9.     The transcripts submitted as Plaintiff's Third Evidentiary Submission at Exhibit F speak for themselves and Franklin does not dispute the accuracy of the transcripts.  For clarity, Franklin notes that Plaintiff's citation to testimony (Meadows Dep. 174:3-9; 204:16-205:1) is wholly inapplicable to the proposition for which it is cited.  Plaintiff's statement, in any event, is immaterial to the Court's determination that Plaintiff's TCPA claim is due to be dismissed and her summary judgment motion denied as a matter of law.

10.     Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part I, Paragraph 5, *supra.* The transcripts submitted as Plaintiff's Third Evidentiary Submission at Exhibit F speak for themselves and Franklin does not dispute the accuracy of the transcripts.  Plaintiff's statement, however, is an oversimplification of the transcripts and testimony.  Nonetheless, Plaintiff's oversimplification of the

evidentiary record is immaterial to the Court's determination that Plaintiff's TCPA claim is due to be dismissed and her summary judgment motion denied as a matter of law.

11.    Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part I, Paragraph 5, *supra.*  Franklin further states that the transcripts submitted as Plaintiff's Third Evidentiary Submission at Exhibit F speak for themselves and Franklin does not dispute the accuracy of the transcripts.  More detailed statements pertaining to Plaintiff's conversations with Franklin are set out in Part III, Paragraphs 13 - 17 below.

12.    Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part I, Paragraph 5, *supra.*  Franklin does not dispute it utilized an autodialer to call debtors at their confirmed and verified telephone number.  (Doc. 83 at 4.)  Franklin does dispute Plaintiff's statement that her telephone number was placed in an autodialer so "Ms. Meadows' phone number could be dialed continuously, without human interaction, according to pre-set criteria" because this is unsupported by the citation to the record.  The referenced testimony is inapposite to the proposition for which it is cited.

5

13.     Franklin does not dispute that it utilized an autodialer to call debtors at their confirmed and verified telephone number. (Doc. 83 at 4.)  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part I, Paragraph 5, *supra.*

14.     Franklin disputes the accuracy of this statement as the account notes reflect approximately 127 calls identified as "A.C. CLD AND LFT MSG" to (XXX) XXX-4556.  (*See* Doc. 95 at Ex. 8.)  In any event, the exact number of calls is immaterial to the Court's determination that Plaintiff's TCPA claim is due to be dismissed and her summary judgment motion denied as a matter of law.  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part I, Paragraph 5, *supra.*

15.     Franklin disputes the accuracy of this statement as the account notes reflect approximately twenty-five calls beginning with the initials "G.C." to (XXX) XXX-4556.  (*See* Doc. 95 at Ex. 8.)  In any event, the exact number of calls is immaterial to the Court's determination that Plaintiff's TCPA claim is due to be dismissed and her summary judgment motion denied as a matter of law.  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part I, Paragraph 5, *supra.*

16.     Franklin disputes the accuracy of this statement as the account notes reflect approximately thirty-two calls identified as "A.C. CLD NO MSG LFT" to (XXX) XXX-4556.  (*See* Doc. 95 at Ex. 8.)  In any event, the exact number of calls is immaterial to the Court's determination that Plaintiff's TCPA claim is due to be dismissed and her summary judgment motion denied as a matter of law.  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part I, Paragraph 5, *supra.*

17.     Franklin disputes the accuracy of this statement as the account notes reflect approximately twenty-three calls identified as "DLR CLD HM#/NO ANS" to (XXX) XXX-4556.  (*See* Doc. 95 at Ex. 8.)  In any event, the exact number of calls is immaterial to the Court's determination that Plaintiff's TCPA claim is due to be dismissed and her summary judgment motion denied as a matter of law.  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part I, Paragraph 5, *supra.*

18.     Franklin does not dispute that the account notes reflect fifteen entries identified as "DLR CLD NETWRK REJCT."  (*See* Doc. 95 at Ex. 8.)  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part I, Paragraph 5, *supra.*

19.   Franklin disputes the accuracy of this statement as the account notes reflect approximately sixteen calls identified as "NO ANSWER" to (XXX) XXX-4556. (*See* Doc. 95 at Ex. 8.) In any event, the exact number of calls is immaterial to the Court's determination that Plaintiff's TCPA claim is due to be dismissed and her summary judgment motion denied as a matter of law. Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report. *See* Part I, Paragraph 5, *supra.*

20.   Franklin disputes Plaintiff's statement that Franklin initiated nine calls identified as "NO PHONES." A "NO PHONES" entry in the account notes signifies there was no telephone number on the account for Franklin to dial. (Doc. 95 at Ex. 2, McClain Dep. 129:8-13.) Thus, no call was actually initiated. Nonetheless, this statement is immaterial to the Court's determination that Plaintiff's TCPA claim is due to be dismissed and her summary judgment motion denied as a matter of law.

21.   Franklin disputes the accuracy of this statement as the account notes reflect approximately eight calls identified as "A.C. CALLED AND LEFT MSG" to (XXX) XXX-4556. (*See* Doc. 95 at Ex. 8.) In any event, the exact number of calls is immaterial to the Court's determination that Plaintiff's TCPA claim is due to be dismissed and her summary judgment motion denied as a matter of law. Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's

8

counsel's statements in the Joint Status Report.  *See* Part I, Paragraph 5, *supra.*

22.     Franklin disputes the accuracy of this statement as the account notes reflect six entries identified as "TEL RES NO ANSWER" to (XXX) XXX-4556. (*See* Doc. 95 at Ex. 8.)  Franklin further disputes the accuracy of this statement as the account notes reflect five calls identified as "DLR CLD HM#/TRANSFRD" to (XXX) XXX-4556.  (*See* Doc. 95 at Ex. 8.)  In any event, the exact number of entries or calls is immaterial to the Court's determination that Plaintiff's TCPA claim is due to be dismissed and her summary judgment motion denied as a matter of law. Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part I, Paragraph 5, *supra.*

23.     Franklin does not dispute that the account notes reflect three entries identified as "DLR CLD HM#/BUSY." (*See* Doc. 95 at Ex. 8.)  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part I, Paragraph 5, *supra.*

24.     Franklin disputes the accuracy of this statement as the account notes reflect three entries identified as "LFT MSG ON MACHINE" to (XXX) XXX-4556. (*See* Doc. 95 at Ex. 8.)  In any event, the exact number of entries is immaterial to the Court's determination that Plaintiff's TCPA claim is due to be dismissed and her

summary judgment motion denied as a matter of law.  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part I, Paragraph 5, *supra.*

25.    Franklin does not dispute that the account notes appear to reflect two entries identified as "LFT MESS/3RD PARTY." (*See* Doc. 95 at Ex. 8.)  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part I, Paragraph 5, *supra.*

26.    Franklin disputes the accuracy of this statement.  An "Invalid home phone" entry in the account notes signifies that as a result of a telephone call, a collector deemed the called telephone number invalid. (McClain Dep. 147:13-150:6.) Nonetheless, Plaintiff's mischaracterization is immaterial to the Court's determination that Plaintiff's TCPA claim is due to be dismissed and her summary judgment motion denied as a matter of law.  Plaintiff's suggestion that Franklin was calling her also contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part I, Paragraph 5, *supra.*

27.    Franklin does not dispute that the account notes reflect one entry identified as "PHONE# CONFIRMATION." (*See* Doc. 95 at Ex. 8.)  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part I, Paragraph 5, *supra.*

28.     Franklin does not dispute that the account notes reflect one entry identified as "HME# TRANSFR COLLECTR."  (*See* Doc. 95 at Ex. 8.)  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part I, Paragraph 5, *supra.*

29.     Franklin does not dispute that the account notes reflect one entry identified as "LEFT MSG - INCOMPLETE."  (*See* Doc. 95 at Ex. 8.)  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part I, Paragraph 5, *supra.*

30.     Franklin does not dispute that the account notes reflect one entry identified as "PHONE# NOT CONFIRMED."  (*See* Doc. 95 at Ex. 8.)  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part I, Paragraph 5, *supra.*

## II.     <u>Response To Plaintiff's Statement of Undisputed Facts In Plaintiff's Second Motion for Summary Judgment Regarding the Bona Fide Error Defense</u>

2.     Plaintiff's assertion is unsupported by the record.  Plaintiff's statement, however, is immaterial to the Court's determination that Plaintiff's Second Motion for Summary Judgment is due to be denied.   An accurate recitation of the calls to (XXX) XXX-4556 is set forth in Franklin's Motion.  (Doc. 95 ¶¶ 22, 23.)

11

4.     Plaintiff's statement is an inaccurate representation of the record and contradicts her statement in the parties's Joint Status Report that Plaintiff obtained (XXX) XXX-4556 in May 2006. (Doc. 83 at 3.) Franklin also disputes this statement to the extent Plaintiff's citation to the testimony of Sherri McClain is inapposite to the proposition for which it is cited.  Nonetheless, when Plaintiff obtained (XXX) XXX-4556 and her citation to inapposite testimony is immaterial to the Court's determination that Plaintiff's FDCPA claims are due to be dismissed as a matter of law and that Plaintiff's Second Motion for Summary Judgment is due to be denied.

5.     Plaintiff's statement is contrary to her testimony and Plaintiff's counsel's statements in the Joint Status Report.  Plaintiff testified she "knew the calls were not for me because I didn't owe anybody" (Meadows Dep. 40:5-9), and that the calls to (XXX) XXX-4556 were for Taylor or the Tidmores. (Meadows Dep. 72:3-7, 173:21-174:2).  The Joint Status Report sets out as Undisputed Material Facts that the telephone calls at issue concerned debts owed by Taylor or by the Tidmores and that Plaintiff did not owe any debt to Franklin that was the subject of any telephone calls at issue in this lawsuit. (Doc. 83 at 3.)  Plaintiff's misrepresentation of the record is inappropriate and cannot support her motion for summary judgment.

6.     Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part II,

Paragraph 5, *supra*.   Nonetheless, the transcripts submitted as Plaintiff's Third Evidentiary Submission at Exhibit F speak for themselves and Franklin does not dispute the accuracy of the transcripts.

8.      Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part II, Paragraph 5, *supra*. The transcripts submitted as Plaintiff's Third Evidentiary Submission at Exhibit F speak for themselves and Franklin does not dispute the accuracy of the transcripts.  Plaintiff's statement, however, is an oversimplification of the transcripts and testimony.  Nonetheless, Plaintiff's oversimplification of the evidentiary record is immaterial to the Court's determination that Plaintiff's FDCPA claims are due to be dismissed as a matter of law and that Plaintiff's Second Motion for Summary Judgment is due to be denied.

9.      Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part II, Paragraph 5, *supra*.  Franklin further states the transcripts submitted as Plaintiff's Third Evidentiary Submission at Exhibit F speak for themselves and Franklin does not dispute the accuracy of the transcripts.  More detailed statements pertaining to Plaintiff's conversations with Franklin are set out in Part III, Paragraphs 13-17 below.

10.   Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report. *See* Part II, Paragraph 5, *supra.*  Franklin does not dispute it utilized an autodialer to call debtors at their confirmed and verified telephone number. (Doc. 83 at 4.)  Franklin does dispute Plaintiff's statement that her telephone number was placed in an autodialer so "Ms. Meadows' phone number could be dialed continuously, without human interaction, according to pre-set criteria" because this is unsupported by the citation to the record.  The referenced testimony is inapposite to the proposition for which it is cited.

11.   Franklin does not dispute that it utilized an autodialer to call debtors at their confirmed and verified telephone number. (Doc. 83 at 4.)  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part II, Paragraph 5, *supra.*

12.   Franklin disputes the accuracy of this statement as the account notes reflect approximately 127 calls identified as "A.C. CLD AND LFT MSG" to (XXX) XXX-4556.  (*See* Doc. 95 at Ex. 8.)  In any event, the exact number of calls is immaterial to the Court's determination that Plaintiff's Second Motion for Summary Judgment is due to be denied.  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status

14

Report.  *See* Part II, Paragraph 5, *supra.*

13.     Franklin disputes the accuracy of this statement as the account notes reflect approximately twenty-five calls beginning with the initials "G.C." to (XXX) XXX-4556.  (*See* Doc. 95 at Ex. 8.)  In any event, the exact number of calls is immaterial to the Court's determination that Plaintiff's Second Motion for Summary Judgment is due to be denied.  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part II, Paragraph 5, *supra.*

14.     Franklin disputes the accuracy of this statement as the account notes reflect approximately thirty-two calls identified as "A.C. CLD NO MSG LFT" to (XXX) XXX-4556.  (*See* Doc. 95 at Ex. 8.)  In any event, the exact number of calls is immaterial to the Court's determination that Plaintiff's Second Motion for Summary Judgment is due to be denied.  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part II, Paragraph 5, *supra.*

15.     Franklin disputes the accuracy of this statement as the account notes reflect approximately twenty-three calls identified as "DLR CLD HM#/NO ANS" to (XXX) XXX-4556.  (*See* Doc. 95 at Ex. 8.)  In any event, the exact number of calls is immaterial to the Court's determination that Plaintiff's Second Motion for

Summary Judgment is due to be denied.  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part II, Paragraph 5, *supra*.

16.     Franklin does not dispute that the account notes reflect fifteen entries identified as "DLR CLD NETWRK REJCT."  (*See* Doc. 95 at Ex. 8.)  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part II, Paragraph 5, *supra*.

17.     Franklin disputes the accuracy of this statement as the account notes reflect approximately sixteen calls identified as "NO ANSWER" to (XXX) XXX-4556.  (*See* Doc. 95 at Ex. 8.)  In any event, the exact number of calls is immaterial to the Court's determination that Plaintiff's Second Motion for Summary Judgment is due to be denied.  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part II, Paragraph 5, *supra*.

18.      Franklin disputes Plaintiff's statement that Franklin initiated nine calls identified as "NO PHONES."  A "NO PHONES" entry in the account notes signifies there was no telephone number on the account for Franklin to dial.  (McClain Dep. 129:8-13.)  Thus, no call was actually initiated.  Nonetheless, this statement is immaterial to the Court's determination that Plaintiff's Second Motion for Summary

16

Judgment is due to be denied.

19.     Franklin disputes the accuracy of this statement as the account notes reflect approximately eight calls identified as "A.C. CALLED AND LEFT MSG" to (XXX) XXX-4556.  (*See* Doc. 95 at Ex. 8.)  In any event, the exact number of calls is immaterial to the Court's determination that Plaintiff's Second Motion for Summary Judgment is due to be denied.  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part II, Paragraph 5, *supra.*

20.     Franklin disputes the accuracy of this statement as the account notes reflect six entries identified as "TEL RES NO ANSWER" to (XXX) XXX-4556. (*See* Doc. 95 at Ex. 8.)  Franklin further disputes the accuracy of this statement as the account notes reflect five calls identified as "DLR CLD HM#/TRANSFRD" to (XXX) XXX-4556. (*See* Doc. 95 at Ex. 8.)  In any event, the exact number of entries or calls is immaterial to the Court's determination that Plaintiff's Second Motion for Summary Judgment is due to be denied.  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part II, Paragraph 5, *supra.*

21.     Franklin does not dispute that the account notes reflect three entries identified as "DLR CLD HM#/BUSY." (*See* Doc. 95 at Ex. 8.)  Plaintiff's suggestion

17

that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part II, Paragraph 5, *supra.*

22.    Franklin disputes the accuracy of this statement as the account notes reflect three entries identified as "LFT MSG ON MACHINE" to (XXX) XXX-4556. (*See* Doc. 95 at Ex. 8.)  In any event, the exact number of entries is immaterial to the Court's determination that Plaintiff's Second Motion for Summary Judgment is due to be denied.  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part II, Paragraph 5, *supra.*

23.    Franklin does not dispute that the account notes appear to reflect two entries identified as "LFT MESS/3RD PARTY." (*See* Doc. 95 at Ex. 8.)  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part II, Paragraph 5, *supra.*

24.    Franklin disputes the accuracy of this statement.  An "Invalid home phone" entry in the account notes signifies that as a result of a telephone call, a collector deemed the called telephone number invalid. (McClain Dep. 147:13-150:6.) Nonetheless, Plaintiff's mischaracterization is immaterial to the Court's determination that Plaintiff's Second Motion for Summary Judgment is due to be denied.  Plaintiff's suggestion that Franklin was calling her also contradicts her testimony and Plaintiff's

counsel's statements in the Joint Status Report.  *See* Part II, Paragraph 5, *supra.*

25.     Franklin does not dispute that the account notes reflect one entry identified as "PHONE# CONFIRMATION."  (*See* Doc. 95 at Ex. 8.)  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part II, Paragraph 5, *supra.*

26.     Franklin does not dispute that the account notes reflect one entry identified as "HME# TRANSFR COLLECTR."  (*See* Doc. 95 at Ex. 8.)  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part II, Paragraph 5, *supra.*

27.     Franklin does not dispute that the account notes reflect one entry identified as "LEFT MSG - INCOMPLETE."  (*See* Doc. 95 at Ex. 8.)  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part II, Paragraph 5, *supra.*

28.     Franklin does not dispute that the account notes reflect one entry identified as "PHONE# NOT CONFIRMED."  (*See* Doc. 95 at Ex. 8.)  Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report.  *See* Part II, Paragraph 5, *supra.*

31.     Plaintiff's conclusory statement is unsupported by any specific citation or explanation of the record.  Plaintiff does not set out any factual statement regarding

Franklin's three-call policy. Plaintiff does not set out any factual statement explaining how Franklin allegedly violated its three-call policy.

32.    Plaintiff's suggestion that Franklin was calling her contradicts her testimony and Plaintiff's counsel's statements in the Joint Status Report. *See* Part II, Paragraph 5, *supra.* Furthermore, Plaintiff's statement is unsupported by the record. On October 20, 2008, Plaintiff told Franklin that (XXX) XXX-4556 was not the Tidmores's telephone number. (Doc. 84 at Ex. F at 9:16-10:4.) On October 20, 2008, (XXX) XXX-4556 was removed from association with the Tidmore accounts and is documented in the account notes. (Doc. 95 at Ex. 8 at 0622, 0630.) On October 22, 2008, Plaintiff requested that (XXX) XXX-4556 not be called for Taylor's debts because Taylor did not live with Plaintiff. (Doc. 84 at Ex. F at 21:22-22:1.) The collector viewed the account, but did not apply any notes or a smartcode to the account. (*See* Ex. 9 at 0571.) On March 6, 2009, Plaintiff stated Taylor did not live with her (Doc. 84 at Ex. F at 26:8-9), and Franklin removed (XXX) XXX-4556 from Taylor's accounts as an invalid home number. (Doc. 95 at Ex. 8 at 0121).

34.    Franklin does not dispute that a collector is responsible for reviewing the account notes and performing his/her job responsibility to ascertain the number of times someone has indicated the number called on a particular account is allegedly an incorrect number.

**III.**   **Franklin's Additional Undisputed Facts**

Franklin filed its Motion for Summary Judgment on April 2, 2010 and argued therein that Plaintiff's TCPA claim and FDCPA claims were due to be dismissed and that Franklin is entitled to a judgment as a matter of law.  These additional facts set out herein, and for which there is no genuine dispute, support Franklin's Motion for Summary Judgment and render Plaintiff's motions for summary judgment without merit.

1.   New Franklin hires receive two weeks of training on the FDCPA. (McClain Dep. 14:5-24.) The first week of training consists of classroom instruction. (McClain Dep. 15:2.)  The second week of training is conducted on the collection floor and involves hands-on training with supervisory assistance.  (McClain Dep. 15:2-3.)  Before a new hire may begin the second week of training, he/she must take and pass an FDCPA compliance test with a grade of 100%.  (McClain Dep. 15:4-7.) A new hire has two attempts to pass the test.  (McClain Dep. 15:5-7.)

2.   Franklin provides continuous training through its call monitoring program. (McClain Dep. 19:11-21.) Collectors are required to retake the FDCPA test annually.  (McClain Dep. 105:11-13.)  Collectors also periodically participate in various collection industry seminars as part of their continuing training and education.  (McClain Dep. 105:2-10.)

3.      Franklin utilizes a three-attempt call policy in the debt collection process to verify that the number Franklin is calling is a valid number for the debtor. (McClain Dep. 73:19-74:5, 186:18-187:8; Doc. 95 at Exs. 5 & 6.)  Franklin's three-attempt policy is utilized to address consumers that may lie about their contact information and debt.  (McClain Dep. 73:19-74:5.)  If an account is called three times, that is a collector has three conversations with someone at the called number, and the collector deems the number is invalid on the third attempt, the number is removed from the account.  (McClain Dep. 78:19-25, 159:1-16.)  The collector, however, need not wait until the third conversation to remove a telephone number if it is determined a number is invalid or incorrect.  (McClain Dep. 78:22-79:3.) Collectors are trained on this policy.  (McClain Dep. 187:2-8.)

4.      Plaintiff's residential telephone number before May 2006 was (XXX) XXX-6078.  (Meadows Dep. 29:14-16.)  Prior to Plaintiff acquiring (XXX) XXX-4556 in May 2006, the number was utilized by the Tidmore family.  (Meadows Dep. 51:13-15; Doc. 83 at 3.)

5.      Taylor lived at Plaintiff's residence from approximately October 2006 until April 2008 (Meadows Dep. 24:8-11, 26:16-17; Doc. 83 at 3), and her residential telephone number was her mother's number, (XXX) XXX-4556.  (Meadows Dep. 57:23-58:4, 112:3-11; Doc. 95 at Ex. 7 ¶ 4; Doc. 16 ¶ 4).

22

6.      Plaintiff's claims against Franklin, as they relate to calls for Taylor, do not pertain to the period of time Taylor lived with Plaintiff, but only "after she moved out." (Meadows Dep. 123:18-124:7.)

7.      Taylor had fifteen debts placed with Franklin from October 25, 2006 to October 21, 2008.  (Doc. 95 at Ex. 8 at 0001 - 0002.)  All debts except the first were placed with Taylor's residential number identified as (XXX) XXX-4556.  (Doc. 95 at Ex. 11 at 0171, 0644, 0161, 0165-70, 0172-74, 0176, 0178, 0182 at Lns. 13, 23.)

8.      Franklin also attempted to collect debts from Carol and Neal Tidmore. (Doc. 95 at Ex. 8 at 0622-0643.)  Plaintiff did not speak to anyone from Franklin regarding the Tidmore accounts during 2006 and 2007.  (Doc. 95 at Ex. 8 at 0626-0629, 0636-0637, 0642.)  Franklin made two collection calls regarding the Tidmore accounts in 2008–January 18 and August 8.  (Doc. 95 at Ex. 8 at 0629-0630, 0637, 0642-0643.)  Neither call resulted in a live communication.  (Doc. 95 at Ex. 8 at 0629-0630, 0637, 0642-0643; Doc. 95 at Ex. 12.)  There was no live communication pertaining to the Tidmore accounts until October 20, 2008, when Plaintiff contacted Franklin.  (Doc. 95 at Ex. 8 at 0622-0643; Doc. 95 at Ex. 12.)

9.      Plaintiff did not tell Franklin to stop calling while Taylor lived with Plaintiff.  (Meadows Dep. 195:4-13.)

10.     Meadows knew Franklin's calls to (XXX) XXX-4556 were not for her

23

(Meadows Dep. 40:5-9), and the calls were for Taylor or the Tidmores.  (Meadows Dep. 72:3-7, 173:21-174:2.)  Franklin was not calling (XXX) XXX-4556 to collect a debt from Plaintiff.  (McClain Dep. 137:13-17.)

11.    Franklin did not try to sell Plaintiff anything, did not offer to provide Plaintiff with any services, and Franklin's calls were not solicitation calls.  (Meadows Dep. 78:9-21.)  Plaintiff admits that Franklin's calls placed to (XXX) XXX-4556 were not from a telemarketer.  (Meadows Dep. 174:10-12.)

12.    Plaintiff looks at the caller I.D. on every call to her residence (Meadows Dep. 40:10-17), and screened Franklin's calls.  (Meadows Dep. 40:23-41:9).

13.    Plaintiff contacted Franklin directly on October 20, 2008.  (*See* Doc. 84 at Ex. F at 7:3-4.)  Franklin told Plaintiff that Taylor identified (XXX) XXX-4556 as a contact number and asked Plaintiff for a number where Taylor could be reached.  (Doc. 84 at Ex. F at 8:10-13.)  Plaintiff refused to provide a number, but said she would tell Taylor to call.  (Doc. 84 at Ex. F at 8:14-22.)  Franklin also stated that (XXX) XXX-4556 was associated with the Tidmore accounts.  (Doc. 84 at Ex. F at 9:16-17.)  Plaintiff informed the collector that this was not the Tidmores's number.  (Doc. 84 at Ex. F at 9:18-10:4.)  On October 20, 2008, (XXX) XXX-4556 was removed from association with the Tidmore accounts.  (Doc. 95 at Ex. 8 at 0622, 0630.)  Plaintiff did not tell Franklin that Taylor did not live with Plaintiff or that

24

Taylor no longer utilized (XXX) XXX-4556 as her residential number.  (Doc. 84 at Ex. F at 6-10.)

14.     On October 21, 2008, Plaintiff answered a call from Franklin intended for Taylor and was transferred to a collector.  (*See* Doc. 95 at Ex. 8 at 0111; Doc. 84 at Ex. F at 14:3-4.)  Plaintiff told the collector that she was not the debtor and that "it's probably my daughter that you're looking for.  Not me."  (Doc. 84 at Ex. F at 15:8-11.) Plaintiff was asked if she had a number where Taylor could be reached (Doc. 84 at Ex. F at 15:22-16:1), Plaintiff refused to provided a contact number, but offered to tell Taylor to call Franklin.  (Doc. 84 at Ex. F at 16:2-4.)  Plaintiff did not tell Franklin that Taylor did not live with Plaintiff or that Taylor no longer utilized (XXX) XXX-4556 as her residential number.  (Doc. 84 at Ex. F at 13-17.)

15.     On October 22, 2008, Plaintiff answered a call from Franklin intended for Taylor and was transferred to a collector.  (*See* Doc. 95 at Ex. 8 at 0111; Doc. 84 at Ex. F at 21:1-5.)  The collector viewed the account, but did not apply a smartcode or any account notes.  (*See* Ex. 9 at 0571.) Plaintiff, for the first time, requested (XXX) XXX-4556 not be called for Taylor's debts because Taylor did not live with Plaintiff.  (Doc. 84 at Ex. F at 21:22-22:1.)  The collector asked for a contact number where Taylor could be reached and Plaintiff denied having a contact number for Taylor, but said she would tell Taylor to call Franklin.  (Doc. 84 at Ex. F at 22:2-9.)

16.     As late as October 21, 2008, debts were placed with Franklin identifying Taylor's residential number as (XXX) XXX-4556.  (Doc. 95 at Ex. 11.)  Franklin continued collection efforts at the telephone number Taylor provided to her creditors and was verified as Taylor's contact number since March 2007.  (Doc. 95 at Ex. 8; Doc. 95 at Ex. 11.)  Plaintiff did not answer any calls from Franklin after October 22, 2008 until March 6, 2009.  (Doc. 95 at Ex. 8; Doc. 84 at Ex. F at 25.)

17.     Franklin called (XXX) XXX-4556 on March 6, 2009 and the call was transferred to a collector.  (Doc. 95 at Ex. 8 at 0121.)  Plaintiff stated Taylor did not live with her.  (Doc. 84 at Ex. F at 26:8-9.)  Plaintiff also stated the Tidmores did not live with her, but she got calls everyday.  (Doc. 84 at Ex. F at 26:9-11.)  Franklin, however, had not placed any calls regarding the Tidmore debt since August 8, 2008. (Doc. 95 at Ex. 8 at 0630, 0637, 0643.)  Subsequent to this call from Plaintiff, Franklin removed (XXX) XXX-4556 from Taylor's accounts as an invalid home number.  (Doc. 95 at Ex. 8 at 0121.)

18.     Plaintiff's alleged damages are that the calls annoyed her.  (Meadows Dep. 136:19-21.)  Plaintiff testified that one call stressed her out and frustrated her because she was trying to talk to the caller but the caller would not listen.  (Meadows Dep. 96:6-13, 134:1-9.)  The call was actually a recording.  (Meadows Dep. 95:11-13.)  After testifying the caller was "threatening," Plaintiff qualified her testimony

26

and stated the caller was "real gruff like," but was not threatening and that "maybe [she] used the wrong word" to describe the call as threatening. (Meadows Dep. 97:3-6.) Plaintiff suffered no mental or emotional distress as a result of Franklin's calls. (Meadows Dep. 136:4-9, 136:22-137:1.)

19.   Plaintiff's only purported "inconvenience" was stopping what she was doing to look at caller I.D. to see who was calling.   (Meadows Dep. 153:1-6.) Plaintiff ignored the majority of Franklin's calls.   (Meadows Dep. 153:6-8.) Plaintiff's "inconvenience" was minimal and resulted in only seconds of "inconvenience" to look at caller I.D. (Meadows Dep. 153:17-20.) Notably, Plaintiff looks at caller I.D. on every call to her residence.  (Meadows Dep. 40:10-17.)

## ARGUMENT AND CITATION OF AUTHORITIES

### A.   FRANKLIN IS NOT SUBJECT TO THE TCPA

Plaintiff's theory that Franklin is subject to the TCPA and liable pursuant thereto is based upon misstatements of the record and an illogical and unwarranted extension of the TCPA.  As admitted by Plaintiff, Franklin is a debt collector engaged in the business of collecting debts (Plt First Mem. Supp. Summ. J. ¶ 1), and is not a telemarketer. (Meadows Dep. 174:10-12).  Furthermore, as admitted by Plaintiff, she "knew the calls were not for me because I didn't owe anybody"  (Meadows Dep. 40:5-9), and that the calls to (XXX) XXX-4556 were for Taylor or the Tidmores.

(Meadows Dep. 72:3-7, 173:21-174:2).  Despite clear testimony by Plaintiff on this issue, Plaintiff argues throughout her First Motion for Summary Judgment that Franklin was calling her.  Plaintiff's admission that Franklin was in fact not calling her is dispositive, that is, Franklin is entitled to summary judgment as set forth in Franklin's Motion for Summary Judgment (Docs. 94, 95) and Plaintiff's First Motion for Summary Judgment is due to be denied.

In enacting the TCPA, Congress found in pertinent part:

(1) The use of the telephone **to market goods and services** to the home and other businesses is now pervasive due to the increased use of cost-effective **telemarketing** techniques.

. . .

(5) Unrestricted **telemarketing**, however, can be an intrusive invasion of privacy and, when an emergency or medical assistance telephone line is seized, a risk to public safety.

(6) Many consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from **telemarketers**.

(7) Over half the States now have statutes restricting various uses of the **telephone for marketing**, but **telemarketers** can evade their prohibitions through interstate operations; therefore, Federal law is needed to control residential **telemarketing** practices.

(8) The Constitution does not prohibit restrictions on commercial **telemarketing solicitations**.

(9) Individuals' privacy rights, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that protects the

28

privacy of individuals and permits legitimate **telemarketing** practices.

Telephone Consumer Protection Act, Pub. L. No. 102-243, § 2, 105 Stat. 2394 (1991)

(emphasis added).

The TCPA makes it unlawful "to initiate any telephone call to any residential

telephone line using an artificial or prerecorded voice to deliver a message without

the prior express consent of the called party, unless the call is initiated for emergency

purposes or is exempted by rule or order by the [Federal Communications

Commission] under paragraph (2)(B)."  47 U.S.C. § 227(b)(1)(B).  The Federal

Communications Commission ("FCC") created an exemption for a call "made for a

commercial purpose but does not include or introduce an unsolicited advertisement

or constitute a telephone solicitation[,]" and a call "made to any person with whom

the caller has an established business relationship at the time the call is made."  47

C.F.R. §§ 64.1200(a)(2)(iii), (iv).  The FCC held that "Our rules explicitly exempt

calls made either by a party with whom the subscriber has an established business

relationship or calls that do not transmit an unsolicited advertisement and are made

for a commercial purpose."  *In the Matter of Rules and Regulations Implementing the*

*Telephone Consumer Protection Act of 1991*, Memorandum Opinion and Order, 95-

310, ¶ 17 (1995), 1995 WL 464817.

29

1.    <u>Franklin Did Not Call Plaintiff and Did Not "Affect Plaintiff's Privacy"</u>

It is undisputed that Plaintiff knew the calls at issue were not for her (Meadows

Dep. 40:5-9), and that the calls to (XXX) XXX-4556 were debt collection calls for

Taylor or the Tidmores.  (Meadows Dep. 72:3-7, 173:21-174:2).[1]  In support of her

argument that Franklin violated the TCPA, Plaintiff relies on *Watson v. NCO Group,*

*Inc.*, 462 F. Supp. 2d 641 (E.D. Pa. 2006), a single district court case from

Pennsylvania.  In *Watson*, which was decided on the defendant's 12(b)(6) motion to

dismiss, the plaintiff alleged that after initiating telephone service at his new

residence, he began receiving prerecorded telephone calls from a debt collection

agency improperly alleging that he owed a debt.  Plaintiff alleged he received over

two-hundred collection calls in a five month period and he spent in excess of fifty-

three hours speaking with approximately twenty-nine different collectors or agents

from the collection agency in an attempt to correct the problem.  The court, relying

heavily upon the allegation that the debt collector erroneously called a non-debtor,

held that a non-debtor does not have a business relationship with the debt collector.

Thus, the court noted that the debt collector's calls as alleged would violate the TCPA

because the FCC's exemption set out above does not extend to automatic dialing

---

[1] Plaintiff's counsel's argument in Plaintiff's First Motion for Summary Judgment in contradiction to their client's own testimony notwithstanding.

system calls made to a non-debtor.  Additionally, the court noted that "[s]ince an erroneously called non-debtor has no such existing business relationship, it follows that the purview of the FCC's exemption does not extend to the type of calls made in this case."  *Watson*, 462 F. Supp. 2d at 644.  The *Watson* court also addressed whether the calls adversely affected the plaintiff's privacy rights.  The court noted that a non-debtor's privacy rights are violated when "he is subjected to repeated annoying and abusive debt collection calls that he remains powerless to stop."  *Id.* at 644-45.

*Watson* is wholly distinguishable and inapplicable to this matter.  Franklin, unlike the agency in *Watson*, was calling a number that under the FDCPA belonged to debtors from whom Franklin was attempting to collect.  Franklin had an established business relationship with debtors it was attempting to contact at the telephone number confirmed and verified as the debtors's respective telephone numbers.  Franklin did not attempt to contact or collect a debt from Plaintiff and *none* of Franklin's calls were directed to Plaintiff.  The mere fact that Plaintiff neglected to answer the telephone and tell Franklin the telephone number was no longer utilized by the debtors is not grounds for liability under the TCPA (or any other law).

Additionally, Franklin's calls did not adversely affect Plaintiff's privacy nor has Plaintiff testified that her privacy was affected.  Plaintiff admittedly ignored most

31

of the collection calls.  Franklin's records show that  Plaintiff spoke with Franklin on only four occasions.  These calls lasted less than five minutes total.  Franklin's records show that it spoke with Plaintiff only once regarding the Tidmores when Plaintiff called Franklin.  The factual allegations in *Watson* are inapposite to this case.  The plaintiff in *Watson* allegedly received two-hundred calls in five months, spent over fifty-three hours on the telephone, and spoke to twenty-nine different collectors in an attempt to get the calls to stop.[2]

2.      Franklin Is Not A Telemarketer and Did Not Call Plaintiff

For the purposes of the TCPA, the FCC has defined a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, good, or services, which is transmitted to any person[.]" 47 C.F.R. § 64.1200(f)(12).  Pursuant to the FCC, a "telephone solicitation" and "telemarketing" are synonymous.  *See* 47 C.F.R. §§ 64.1200(f)(10), (12).   A "telemarketer" is "the person or entity that initiates a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, good, or services, which is transmitted to any person[.]" 47 C.F.R. § 64.1200(f)(9).

---

[2] Even accepting Plaintiff's statements regarding the number of times she spoke to Franklin, there is not sufficient evidence to establish that Plaintiff's privacy was affected under *Watson*.

Plaintiff's assertion that Franklin is a telemarketer and makes telephone solicitations is illogical (and contrary to her own testimony).  Plaintiff admits Franklin did not try to sell her anything, did not offer to provide her with any services, and Franklin's calls were not solicitation calls.  (Meadows Dep. 78:9-21.)  Plaintiff also admits that Franklin is a debt collector (Plt First Mem. Supp. Summ. J. ¶ 1) and Franklin's calls placed to (XXX) XXX-4556 were not from a telemarketer.  (Meadows Dep. 174:10-12).  The evidentiary record notwithstanding, Plaintiff argues that Franklin engaged in telephone solicitations.  Because Franklin's debt collection calls do not fall within the clear and unambiguous statutory definition of "telephone solicitation," Plaintiff's argument relies on an illogical interpretation of law.  Notably, and not surprisingly without a single citation of any supporting cases, Plaintiff asserts Franklin "essentially requested that [Plaintiff] purchase her privacy and her peace" and that "Franklin was in effect[] encouraging [Plaintiff] to invest in [Franklin's] provided services of debt collection."  (Plt First Summ. J. at 16-17.)

The FCC has unequivocally stated that "calls solely for the purpose of debt collection **are not** telephone solicitations and **do not** constitute telemarketing" and "calls regarding debt collection . . . are not subject to the TCPA's separate restrictions on 'telephone solicitations.'"  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 07-232, ¶ 11

(2007), 2008 WL 654485 (emphasis added).  The FCC also noted:  "Assuming the debt collection call does not include a telephone solicitation as defined in the TCPA, the caller is not required to honor do-not-call requests under the Commission's company-specific do-not-call rules."  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Second Order on Reconsideration, 05-28, n. 112 (2005), 2005 WL 418189.  Franklin's calls to debtors Taylor and the Tidmores did not include telephone solicitations as such is defined by the TCPA or by any common sense interpretation of that term.  Plaintiff's arguments to the contrary are unfounded, legally unsupported, and do not support her assertion that she is entitled to summary judgment.

3.   Franklin Was Not Calling Plaintiff and Did Not Need An Established Business Relationship With Plaintiff To Call Taylor or the Tidmores

It is undisputed that Plaintiff knew the calls at issue in this litigation were not for her (Meadows Dep. 40:5-9), and that the calls to (XXX) XXX-4556 were actually debt collection calls for Taylor or the Tidmores.  (Meadows Dep. 72:3-7, 173:21-174:2).  Despite Plaintiff's argument to the contrary and in contradiction to Plaintiff's testimony for the majority of Plaintiff's Fist Motion for Summary Judgment, Plaintiff now argues, "In fact, during the relevant time period, Defendant Franklin was not even contacting Ms. Meadows to reach her specifically or concerning any debt

34

alleged to be owed by her." (Plt First Mem. Supp. Summ. J. at 20.)  Undeniably, Franklin was calling a number that under the FDCPA belonged to debtors from whom Franklin was attempting to collect.  Franklin had an established business relationship with debtors it was attempting to contact at the telephone number confirmed and verified as the debtors's respective telephone numbers.  Franklin did not attempt to contact or collect a debt from Plaintiff and *none* of Franklin's calls were admittedly directed to Plaintiff.  Therefore, Franklin has not argued and does not argue here that it had an established business relationship with Plaintiff.

    4.    <u>Franklin Was Not Calling Plaintiff</u>

As set out above, Franklin was not attempting to contact Plaintiff, as Plaintiff readily admits (at least at times).  Therefore, Plaintiff's argument that Franklin did not have express consent to call Plaintiff is immaterial, irrelevant, and does not warrant Plaintiff's assertion that she is entitled to summary judgment.

## B.    THE TCPA IS INAPPLICABLE TO THE FACTS AT ISSUE

The FCC held that "**all debt collection circumstances involve a prior or existing business relationship**."  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 92-443, ¶ 36 (1992), 1992 WL 690928 (emphasis added).  Furthermore, in addressing the TCPA's prohibition on telephone calls to residences using an artificial or

prerecorded voice to deliver a message, the FCC noted that "[s]ince 1992, the Commission's rules have exempted from the prohibition 'a call or message . . . that is made for a commercial purpose but does not include the transmission of any unsolicited advertisement.'" *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Second Order on Reconsideration, 05-28, ¶ 35 (2005), 2005 WL 418189. The FCC has also unequivocally opined that "calls solely for the purpose of debt collection are not telephone solicitations and do not constitute telemarketing." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Request of ACA International for Clarification and Declaratory Ruling, 07-232, ¶ 11 (2007), 2008 WL 65485.

Plaintiff knew Franklin's calls to (XXX) XXX-4556 were not for her (Meadows Dep. 40:5-9), and the calls were for Taylor or the Tidmores. (Meadows Dep. 72:3-7, 173:21-174:2). Furthermore, Plaintiff admits that Franklin did not try to sell her anything, did not offer to provide her with any services, and Franklin's calls were not solicitation calls. (Meadows Dep. 78:9-21.) Plaintiff also admits that Franklin's calls placed to (XXX) XXX-4556 were not from a telemarketer. (Meadows Dep. 174:10-12.) In fact, the calls placed to (XXX) XXX-4556 were not erroneous, but placed to the debtors's confirmed and verified contact number. Plaintiff's distortion and perversion of the applicable law, facts and record show that

Plaintiff is not entitled to summary judgment.  Plaintiff's arguments do, however, further evidence and support Franklin's argument that it is entitled to summary judgment on Plaintiff's TCPA claim.

## C.   PLAINTIFF'S MOTION AS TO THE BONA FIDE ERROR DEFENSE IS DUE TO BE DENIED

Plaintiff's argument in support of her Second Motion for Summary Judgment as to the bona fide error defense is premised, *in toto*, on the unsupported conclusion that Franklin violated the FDCPA.  Plaintiff's apparent argument is that by asserting the bona fide error affirmative defense in its Answer and Affirmative Defenses, Franklin admitted a violation of the FDCPA.  (Doc. 91 at 11.)  Plaintiff does not offer any legal argument or citation in support of this erroneous conclusion.  Furthermore, although Plaintiff concludes that Franklin violated the FDCPA, Plaintiff does not set out which purported provision of the FDCPA Franklin allegedly violated.  Notably, there has been no determination by this Court or the trier of fact that Franklin violated any provision of the FDCPA.  Furthermore, Plaintiff's arguments in her Opposition to Defendant's Motion for Summary Judgment that her allegations pursuant to the FDCPA involve genuine issues of material fact contradict Plaintiff's arguments in her Second Motion for Summary Judgment that Franklin violated the FDCPA and cannot prove that it is entitled to the bona fide error defense.

Franklin asserts that it did not violate any provision of the FDCPA, that Franklin engaged in lawful collection activities, that Franklin's calls were legitimate debt collection calls in Franklin's effort to collect certain debts from debtors, and that Plaintiff's claims must be dismissed as a matter of law.  (*See* Doc. 95.)  Franklin never "admitted," as Plaintiff asserts, that Franklin's conduct and actions violated the FDCPA.  While Franklin denies it violated the FDCPA, it may be nonetheless entitled to the bona fide error defense at trial and would argue accordingly at the appropriate time.  Furthermore, despite Plaintiff's assertions otherwise, Franklin had a system in place to limit the number of collection calls placed to an incorrect or invalid number. Franklin adhered to this policy as reflected in the evidence and testimony.  Plaintiff's own failure to answer the telephone does not negate the availability of the bona fide error defense.

Pursuant to the FDCPA, should it be determined that Franklin violated the FDCPA, Franklin has available to it the "bona fide error" defense.  15 U.S.C. § 1692k(c).  Section 1692k(c) provides that Franklin is not liable under the FDCPA if it shows by a preponderance of the evidence that (1) the presumed FDCPA violation was not intentional; (2) the presumed violation resulted from a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error.  *See* 15 U.S.C. § 1692k(c); *Kort v. Diversified Collection Services, Inc.*, 394

38

F.3d 530, 536 (7th Cir. 2005). To avoid liability for an unintentional violation, a debt collector must establish it maintained adequate systems designed to prevent errors. *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 389 (D. Del. 1992) (debt collector had established adequate procedures to qualify for bona fide error defense where it furnished employees with a FDCPA practice manual, prepared and distributed a three-page memorandum regarding FDCPA policies, and posted cards over each telephone with the required 1692e(11) disclosures).

1.   Plaintiff's Argument That Franklin Intentionally Violated the FDCPA Is Fundamentally Unsound

The first prong – the intent component – of the test to determine the applicability of the bona fide error defense requires a "debt collector to show that the violation was unintentional, not that the underlying act itself was unintentional." *Johnson v. Riddle*, 443 F.3d 723, 728 (10th Cir. 2006). The court in *Johnson* further opined that "a violation is unintentional for purposes of the FDCPA's bona fide error defense if the debt collector can establish the lack of specific intent to violate the Act." *Id.* The intent prong is a subjective test. *Id.*

Without asserting any specific section or provision of the FDCPA or referencing any count of her Second Amended Complaint, Plaintiff concludes that Franklin violated the FDCPA by "causing [Plaintiff's] telephone to ring repeatedly

and continuously, thereby harassing and annoying [Plaintiff] and by communicating

with [Plaintiff] numerous times about debt(s) which she did not owe." (Doc. 91 at

10.) Notably, Plaintiff does not allege or assert that Franklin intended to harass or

annoy Plaintiff. (*See* Doc. 60.) Thus, Franklin's alleged violations of the FDCPA,

as asserted by Plaintiff, were not the result of intentional conduct.

Plaintiff does not cite any portion of the record for the proposition that Franklin

intended to violate the FDCPA. To the contrary, Plaintiff's argument that Franklin

intended to violate the FDCPA is premised on numerous inferences and assumptions,

which are legally insufficient to support a motion for summary judgment. (Doc. 91

at 12-13.) Plaintiff supports her argument that Franklin's conduct intentionally

violated the FDCPA with statements such as "may make it more possible," "may

actually support," or "likely show." In support of her inferential arguments, Plaintiff

cites *Sparks v. Phillips & Cohen Assocs., LTD.*, 641 F. Supp. 2d 1234 (S.D. Ala.

2008). *Sparks*, however, unquestionably provides that it is the jury that could infer

or determine whether the defendant subjectively intended to violate the FDCPA. *Id.*

at 1251. Plaintiff's argument is insufficient on its face and does not support her

motion for summary judgment.

2. <u>Plaintiff's Argument Fails To Assert That An Error Was Made</u>

The second prong – the bona fide component – of the test to determine the

applicability of the bona fide error defense "serves to impose an objective standard of reasonableness upon the asserted unintentional violation." *Johnson*, 443 F.3d at 729 (internal citations omitted).  A bona fide error is one "made in good faith; a genuine mistake, as opposed to a contrived mistake." *Kort*, 394 F.3d at 538.

Plaintiff does not identify any error or mistake made by Franklin, but assumes that an error was made.  This baseless assumption, again, is not sufficient to support summary judgment in favor of Plaintiff on the bona fide error defense.

3.   Franklin Maintains Policies and Procedures Implemented To Avoid Violations of the FDCPA

The third prong – the procedures component – involves a two step inquiry: "first, whether the debt collector 'maintained' – i.e., actually employed or implemented – procedures to avoid errors; and, second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue." *Johnson*, 443 F.3d at 729 (citing 15 U.S.C. § 1692k(c)).  While Franklin denies any violation of the FDCPA, it should be noted that Franklin maintains policies and procedures pertaining to Franklin's calling purportedly invalid or incorrect numbers.  Plaintiff's argument relies on the incorrect assertion that Franklin was calling or attempting to communicate with Plaintiff.  Furthermore, Plaintiff's argument ignores that Franklin was calling debtors at a verified number; and thus, the number was not, in any event,

"incorrect" or "mistakenly" dialed.  Additionally, there has been no determination that Franklin violated the FDCPA.  Therefore, any analysis of the application of Franklin's policies and procedures to the bona fide error defense is premature at this time.

Nonetheless, as set out above, Franklin utilizes a three-attempt call policy in the debt collection process to verify that the number Franklin is calling is a valid number for the debtor, (McClain Dep. 73:19-74:5, 186:18-187:8; Doc. 95 at Exs. 5 & 6), and collectors are trained on this policy.  (McClain Dep. 187:2-8).  If an account is called three times, i.e., if the collector speaks with someone at the number called three times, and the collector deems the number is invalid on the third attempt, the number is removed from the account.  (McClain Dep. 78:19-25, 159:1-16.) Furthermore, three conversations are not required if a collector determines that the called number is incorrect or invalid.  (McClain Dep. 78:22-79:3.)  Plaintiff's assertion that Franklin has no such policy, but that the "three-call rule appears to be more of an understood collection technique than an actual company policy," is contrary to the undisputed testimony and evidence.[3]

Plaintiff conveniently fails to recognize, however, that Franklin was not (as

---

[3]  While Franklin is not quite sure what Plaintiff means by an "understood collection technique," it would seem that a company-wide "understood collection technique" would by definition be a company policy.

admitted by Plaintiff) calling Plaintiff and that Franklin was calling debtors at their verified residential telephone numbers. Plaintiff also ignores the evidence indicating that Franklin complied with its policy. Plaintiff knew Franklin's calls to (XXX) XXX-4556 were not for her and the calls were for Taylor or the Tidmores. Plaintiff did not tell Franklin to stop calling while Taylor lived with Plaintiff. When Plaintiff and Franklin spoke on October 20, 2008, Plaintiff did not tell Franklin on October 20, 2008, that Taylor did not live with Plaintiff or that Taylor no longer utilized (XXX) XXX-4556 as her residential number.[4]  (Doc. 84 at Ex. F at 6-10.)  On October 21, 2008, Plaintiff did not tell Franklin that Taylor did not live with her or that Taylor no longer utilized (XXX) XXX-4556 as her residential number.  (Doc. 84 at Ex. F at 13-17.)  On October 22, 2008, Plaintiff, for the first time, requested that (XXX) XXX-4556 not be called for Taylor's debts because Taylor did not live with Plaintiff.  (Doc. 84 at Ex. F at 21:22-22:1.)  Plaintiff did not answer any calls from Franklin after October 22, 2008 until March 6, 2009.  (*See* Doc. 95 at Ex. 8; Doc. 84 at Ex. F at 25.) On March 6, 2009, Plaintiff stated Taylor did not live with her.  (Doc. 84 at Ex. F at 26:8-9.)  Subsequent to this call, Franklin removed (XXX) XXX-4556 from Taylor's accounts as an invalid home number.  (Doc. 95 at Ex. 8 at 0121.)  Franklin identified

---

[4] On October 20, 2008, after being told by Plaintiff that the Tidmores no longer utilized (XXX) XXX-4556, Franklin removed the number from the Tidmore accounts.  (*See* Doc. 84 at Ex. F at 9:16- 10:4; Doc. 95 at Ex. 8 at 0622, 0630.)

(XXX) XXX-4556 as an incorrect contact number for Taylor after being told only two times that Taylor no longer utilized the number.[5]

Franklin's policy provides that the collector should document in the account notes three times that the called number appears to be incorrect.  Plaintiff did not tell Franklin that it was attempting to contact Taylor at an incorrect telephone number until October 22, 2008.  Plaintiff did not answer another call from Franklin to (XXX) XXX-4556 until March 6, 2009.  At that time, Plaintiff told Franklin that Taylor no longer lived with Plaintiff and Franklin removed (XXX) XXX-4556 from Taylor's accounts.  After being told only two times that Taylor did not live with Plaintiff, Franklin removed what was purported to be an invalid number.[6]  Franklin had a system in place to limit the number of collection calls placed to a wrong or invalid telephone number and Franklin adhered to its policy as reflected in the evidence and testimony.  Furthermore, there was no violation of the FDCPA.

Plaintiff's reliance on *Drossin v. Nat'l Action Fin. Serv., Inc.*, 641 F. Supp. 2d 1314 (S.D. Fla. 2009), is misplaced.  The issue before the court was not the debt collector's use of an autodialer, but the debt collector's failure to make the necessary

---

[5] The collector's non-entry of a note on October 22, 2008 is a moot point considering Franklin identified (XXX) XXX-4556 as incorrect after only being told two times.

[6] The fact that the collector did not document the account on October 22, 2008 is a moot point.  (*See* Doc. 95 ¶ 35.)  Franklin's conduct was consistent with its policy and the number was removed.

disclosures pursuant to 15 U.S.C. § 1692e(11). The debt collector argued that its failure to leave a non-FDCPA compliant message was subject to the bona fide error defense because the plaintiff was called via the autodialer in error, which left the non-compliant message at issue. The debt collector apparently argues that but for the error in placing the number in the autodialer to be called, a live call as opposed to an autodialer call would have been made to the plaintiff and the non-FDCPA compliant message would not have been left. The court held that the debt collector did not point to any procedures that would prevent telephone numbers from being "erroneously" called by the autodialer, thus resulting in the message at issue, and that the bona fide error defense failed as to the claim that the plaintiff was called in error. *Drossin*, 641 F. Supp. 2d at 1322. Contrary to the facts in *Drossin*, Franklin called a telephone number that for the purposes of the FDCPA was the debtors's telephone number. Franklin was not calling Plaintiff, but debtors at their verified residential telephone numbers. Therefore, Franklin's calls to (XXX) XXX-4556 were not in error.

While Franklin denies any violation of the FDCPA, in response to Plaintiff's Second Motion for Summary Judgment, Franklin asserts that it has a policy in place to prevent calls to improper parties and that Franklin's policy was implemented and successful. Because Franklin did not violate the FDCPA, Plaintiff's argument that Franklin is not entitled to the bona fide error defense is premature and her Second

Motion for Summary Judgment is due to be denied.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendant Franklin Collection

Service, Inc., respectfully requests that the Court deny Plaintiff's motion for summary

judgment.


/s/ Brent G. Grainger
John W. Scott
Brent G. Grainger
Attorneys for Defendant
Franklin Collection Service, Inc.


**OF COUNSEL:**
SCOTT DUKES & GEISLER, P.C.
2100 Third Avenue North, Suite 700
Birmingham, Alabama 35203
Telephone:  (205) 251-2300
Telecopier:  (205) 251-6773
Email:       jscott@scottdukeslaw.com
             bgrainger@scottdukeslaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 30, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

Brandon L. Blankenship, Esq.
Meredith L. Phillips, Esq.
BLANKENSHIP, HARRELSON & LINTON, L.L.C.
2001 Park Place North, Suite 825
Birmingham, Alabama 35203-2774
Email:      brandon.blankenship@bhlattorneys.com
            meredith.phillips@bhlattorneys.com


                                        /s/ Brent G. Grainger
                                        Of Counsel


52754.1

47