# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | | |
|---|---|---|
| **ELIZABETH MEADOWS,** | } | |
| Plaintiff, | } | |
| vs. | } | 7:09 - cv - 0605 |
| **FRANKLIN COLLECTION SERVICE, INC.,** | } | |
| Defendant. | } | |

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S FIRST AND SECOND MOTIONS FOR PARTIAL SUMMARY JUDGMENT

COMES NOW the Plaintiff, Elizabeth Meadows, ("Ms. Meadows") by and through her attorneys of record and, in further support of Ms. Meadows' Motions for Partial Summary Judgment, hereby submits this Reply Brief to Defendant Franklin Collection Service, Inc.'s ("Franklin") Opposition to Plaintiff's First and Second Motions for Partial Summary Judgment.

## **INTRODUCTION**

In response to Ms. Meadows' Motions for Partial Summary Judgment regarding the Telephone Consumer Protection Act ("TCPA") and Franklin's failure to support its asserted bona fide error defense to Ms. Meadows' claims under the Fair Debt Collection Practices Act ("FDCPA"), Franklin submitted an Opposition to said Motions. Franklin's Opposition contained mischaracterizations of testimony and failed to present sufficient disputes regarding the facts which are material to the elements of Ms. Meadows' Motions for Partial Summary Judgment. In order to clarify these matters for the Court, Ms. Meadows respectfully submits this Reply Brief.

To the extent Franklin opposes Ms. Meadows' Motions for Partial Summary and discounts her testimony as insufficient to support said Motions, Ms. Meadows asserts that her testimony is neither speculation nor unsupported doubt; rather, Ms. Meadows' testimony regarding when and how often Franklin called her as well as what their conversations entailed is evidence, supported by her personal knowledge of the events, and is proper to support a motion for summary judgment.[1] Further, Franklin's additional allegedly "undisputed" facts do not create a genuine issue of dispute regarding any facts which are material to the issues set forth in Ms. Meadows' Motions for Summary Judgment. Based on the evidence before the Court, Ms. Meadows' asserts that the TCPA applies to Franklin's conduct in the instant action and that Franklin has failed to present

---

[1] FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

sufficient evidence to support its bona fide error defense.  Thus, Ms. Meadows prays this Court decide these issues in favor of Ms. Meadows, as a matter of law, and grant her Motions for Partial Summary Judgment.

### MS. MEADOWS' DISPUTES WITH FRANKLIN'S ADDITIONAL ALLEGEDLY "UNDISPUTED" FACTS

1. Ms. Meadows disputes this as Ms. McClain actually said new Franklin hires receive two weeks of training in general, not *solely on the FDCPA*.[2]  Ms. Meadows also disputes the implication that the first or second week of training are *solely on the FDCPA* as Ms. McClain did not state this.[3] Ms. Meadows does not dispute the rest of fact(s) number 1.

2. Ms. Meadows disputes that collector monitoring is *solely for continuous training on the FDCPA*.[4]  Ms. Meadows does not dispute the remainder of fact(s) number 2.

3. **Ms. Meadows disputes a three-call "rule" for wrong numbers is a company policy; it appears to be merely a collection technique which a collector may or may not choose to implement.**[5]  In contrast, Franklin does have actual Company Policies and

---

[2]McClain Dep., 14:2-24, Sept. 23, 2009, Plaintiff's Second Evidentiary Submission Exhibit B.

[3]McClain Dep., 14:2-24, 15:2-3, Plaintiff's Second Evidentiary Submission Exhibit B.

[4]McClain Dep., 19:11-18; 58:16 - 60:1, Plaintiff's Second Evidentiary Submission Exhibit B.

[5]See Plaintiff's Exhibit 15 and Defendant's Exhibit 1 to McClain Dep. (explaining when a third party states the collector has the wrong number /that said party is not the debtor, the collector is instructed to keep the wrong number in the system, to be called again until the incorrectly called party talks to a collector and tells them it is the wrong number two more times)

this technique is not one of them.[6] In fact, the Company Policy addressing appropriate action for verbal complaints from third parties (not the debtor) states incorrect numbers should be removed without waiting for three conversations.[7] Also, although Ms. McClain opines about the reason for this technique, stating "[y]ou have to cap it somewhere," she does not know where the three-call limit came from.[8] Ms. Meadows disputes the statement that a wrong number is removed from an account after the account is called three times, a collector has three live conversations with an incorrectly called party and the collector deems the number invalid on the third attempt. Ms. Meadows informed Franklin, more than three times, that she was not the debtor and/or that her number was the wrong number,[9] yet Franklin continued to call Ms. Meadows and in fact, left her number in its automated dialer.[10] Further, Franklin admits it spoke with Ms. Meadows at least

---

Plaintiff's Second Evidentiary Submission Exhibit B.

[6]See **Plaintiff's Fifth Evidentiary Submission Exhibit K, Franklin's Policies/ Procedures.**

[7]McClain Dep., 23:11 - 24:10, Plaintiff's Second Evidentiary Submission Exhibit B; **Plaintiff's Fifth Evidentiary Submission Exhibit K, Franklin's Policies /Procedures.**

[8]McClain Dep., 73:19-22; 73:24 - 74:5, Plaintiff's Second Evidentiary Submission Exhibit B.

[9]Meadows Dep., 105:13 - 106:3; 128:11-18; 200:6 - 201:8, Nov. 10, 2009, Plaintiff's Third Evidentiary Submission Exhibit E; Transcripts of Recordings, Plaintiff's Third Evidentiary Submission Exhibit F. Although Ms. Meadows asserts she spoke with Franklin more than four times, Franklin's recordings evidence four conversations.

[10]Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G; see also McClain Dep. 85:11-17 (a number stays in the dialer until Franklin is told 3 separate times it is a wrong number), Plaintiff's Second Evidentiary Submission Exhibit B.;Meadows Dep., 69:20 - 70:15; 71:12-2; 72:16-22; 177:18-20; 178:4-10, Plaintiff's Third Evidentiary Submission

4

four times.[11] Ms. Meadows does not dispute that Ms. McClain stated there are some scenarios where a single call would result in removal of an invalid number, such as a call to what turned out to be the police department or 911. However, to the extent Franklin continues to allege that its three-call technique in fact states and requires three calls which result in conversations, Ms. Meadows disputes that, per Franklin's own statements, this technique would not require a collector to wait until the third conversation to remove an invalid telephone number.[12] In fact, Ms. McClain states that, according to the asserted three-call technique, if a call results in a conversation with a "third party, then we will ask for three conversations with them, and then the calls will stop."[13]

4. Ms. Meadows does not dispute these facts.

5. While Ms. Meadows said Ms. Taylor had permission to use Ms. Meadows' residential number, Ms. Meadows disputes any implication this permission was unlimited.[14] She does not dispute the rest of 5.

---

Exhibit E.

[11] See Transcripts of Recordings, Plaintiff's Third Evidentiary Submission Exhibit F. Although Ms. Meadows asserts she spoke with Franklin more than four times, Franklin's recordings evidence four conversations.

[12] McClain Dep., 157:12-14; 186:6-14, Plaintiff's Second Evidentiary Submission Exhibit B.

[13] McClain Dep., 157:12-14, Plaintiff's Second Evidentiary Submission Exhibit B.

[14] Meadows Dep., 123:3-11; 190:7-191:19; 192:4-7, Plaintiff's Third Evidentiary Submission Exhibit E.

6. Ms. Meadows' disputes this fact; her claims against Franklin pertain to the entire time period she received calls for both Ms. Taylor and the Tidmores. Although she stated that the calls for Ms. Taylor harassed her "after she moved out"[15] and "did not frustrate [her] as bad" when Ms. Taylor stayed with her, she has also stated that said calls did frustrate her, inconvenience her, aggravate her, cause her stress, etc. as said calls were not for her and came during "my time, [on] my phone, [at] my home."[16]

7. Ms. Meadows does not dispute at least 15 debts allegedly owed by Ms. Taylor were placed with Franklin, but disputes any implication that (a) the account notes are completely accurate or (b) Franklin did not call Ms. Meadows regarding Ms. Taylor's debt(s) until October 2006 or later, as she remembers receiving calls for Ms. Taylor from Franklin prior to that time not reflected in the account notes.[17] Further, Ms. Meadows disputes that all of the debts allegedly owed by Ms. Taylor and placed with Franklin except the first one identified (XXX) XXX-4556 as Ms. Taylor's residential number. As set forth in Defendant's Exhibit 11, Ms. Meadows disputes that (XXX) XXX-4556 was necessarily provided in each document as *Ms. Taylor's residential* number or that it was verified as a correct contact number for

---

[15] Meadows Dep., 123:20 - 124:7, Plaintiff's Third Evidentiary Submission Exhibit E.

[16] Meadows Dep., 84:14-85:7; 202:22-203:10, Plaintiff's Third Evidentiary Submission Exhibit E.

[17] Meadows Dep., 71:12-21; 72:16-22; 150:12-20; 162:5-14; 197:17-22, Plaintiff's Third Evidentiary Submission Exhibit E.

6

the entire length of Franklin's calls– from May 2006 until March 2009.[18] Franklin produced a "Patient Information Sheet" for <u>one</u> of Ms. Taylor's 15 alleged debts.[19] Other than its own placement records which Ms. Meadows has disputed, Franklin does not provide documentation to show (XXX) XXX-4556 was listed or "verified" as Ms. Taylor's home/contact **number.**

8. Ms. Meadows does not dispute Franklin made *at least* two calls regarding the Tidmores in 2008, but disputes: (1) that Franklin did not attempt to contact the Tidmores at (XXX) XXX-4556 until November 2006; and (2) that Ms. Meadows did not speak to Franklin regarding the Tidmores in 2006, 2007 or at all until October 2008 Franklin. In support of her disputes, Ms. Meadows testified she received calls from Franklin for the Tidmores on (XXX) XXX-4556 starting in May 2006[20] and continuing for nearly 3 years.[21]

9. Ms. Meadows disputes restatement of her testimony. **Ms. Meadows stated she**

---

[18]See, e.g., Defendant's Exhibit 11, at 0165 at Lines 13, 18; at 1067 at Lines 13, 18; at 1069 at Lines 13, 18; at 1070 at Lines 13, 18; at 1071 at Lines 13, 18; at 1072 at Lines 13, 18; at 1073 at Lines 13, 18; at 1074 at Lines 13, 18 (providing no specific designation that (XXX) XXX-4556 is Ms. Taylor's *residential* number and listing additional telephone numbers in different places with no designation as to what kind of numbers they are); <u>see also</u> Meadows Dep., 150:12-20, Plaintiff's Third Evidentiary Submission Exhibit E.

[19]Defendant's Exhibit 11 in Doc. 96, at 0181, 0182. Although the information provided to this particular creditor does list (XXX) XXX-45556 as Ms. Taylor's "home phone" in November 2007, it also lists several other phone numbers.

[20]Meadows Dep., 71:12-21; 72:8-11; 72:16-22; 80:17 - 81:1; 162:5-6; 197:2-22, Plaintiff's Third Evidentiary Submission Exhibit E.

[21]Meadows Dep., 82:9-20; 197:2-22, Plaintiff's Third Evidentiary Submission Exhibit E.

merely does not "think" she told Franklin to stop calling when Ms. Taylor stayed with her; however, she did previously tell them the debt was not hers and her number was not Ms. Taylor's.[22]

10. Ms. Meadows disputes she *knew* Franklin's calls were not for her. Franklin never said who it called for;[23] until she answered, spoke with someone and learned who/what debt the calls concerned, Ms. Meadows did not "know" calls were not for her.[24] She does not dispute Franklin later stated it was not calling her residence to collect debt she owed. However, just because Franklin has now unequivocally revealed that the calls placed to Ms. Meadows' phone number were in fact, not for her and were not based on any debt she owed,[25] does not diminish the objective view of those phone calls *at the time they were made*. From an objective point of view, Franklin's unidentified phone calls and/or messages made to Ms. Meadows' phone number could haven been for her and until she answered said phone calls and spoke with a representative, Franklin did not state anything to the contrary.[26]

---

[22]Meadows Dep., 150:12-20 195:8-18, Plaintiff's Third Evidentiary Submission Exhibit E.

[23]Meadows Dep., 39:17-19; 49:17-20; 80:10 - 81:1; 96:9-10; 192:15 - 193:6; 198:13 - 200:5, Plaintiff's Third Evidentiary Submission Exhibit E.

[24]Transcripts of Recordings, Plaintiff's Third Evidentiary Submission Exhibit F; Meadows Dep., 80:12-16; 192:15-18 (based on her testimony identified in footnote 24, any statement to the contrary is an assumption based on her thought she did not owe any money), Plaintiff's Third Evidentiary Submission Exhibit E.

[25]McClain Dep. 137: 8-17, Plaintiff's Second Evidentiary Submission Exhibit B.

[26]Meadows Dep., 39:17-19; 49:17-20; 80:10 - 81:1; 96:9-10; 192:15 - 193:6; 198:13 - 200:5; Plaintiff's Third Evidentiary Submission Exhibit E.

8

11. Ms. Meadows disputes these facts; to her, "solicitation" is "asking for something, [] directly or indirectly, wanting you to give[] something."[27] More than once, Franklin asked her for information about the true debtors and to leave messages for them.[28] Whether *Franklin* provided a service, its continuous calls to Ms. Meadows, invading her privacy / disrupting her life,[29] encouraged *her* to acquire /provide information it was looking for to get the debt paid so they would stop calling **her. Ms. Meadows did not admit Franklin was not a telemarketer as that term is defined in connection with the TCPA. As explained in her TCPA Motion for Summary Judgment, Ms. Meadows generally asserts the TCPA applies and Franklin's communications with Ms. Meadows about debt(s) she did not owe qualify as telephone solicitations under the TCPA. In any event, characterization of a conversation as a telephone solicitation or an entity as a telemarketer as those terms are particularly used in the TCPA are legal arguments calling for legal conclusions.**

12. Ms. Meadows does not dispute she looks at her caller i.d. or sometimes screens calls. However, she disputes that she *always* screened Franklin's calls or that, if she did, she never answered; she answered and spoke to Franklin several times.[30] Even

---

[27]Meadows Dep., 174: 3-9; 187:3-8, Plaintiff's Third Evidentiary Submission Exhibit E.

[28]See, e.g., Meadows Dep., 94:11 - 96:19; 134:14 - 135:3; 174: 3-9; 188:9-15; 204:21 - 205:1, Plaintiff's Third Evidentiary Submission Exhibit E.

[29]Meadows Dep., 202:23 - 203:4, Plaintiff's Third Evidentiary Submission Exhibit E.

[30]See, e.g., Meadows Dep., 98:4-6 & 98:16 - 3; 104:1-5; 105:4 - 106:10; 128:11-18; 165:22 - 166:1, Plaintiff's Third Evidentiary Submission Exhibit E; see also Transcripts of Recordings, Plaintiff's Third Evidentiary Submission Exhibit F.

9

if she let Franklin's calls go to the answering machine, she "would always stop whatever [she] was doing and go see who was calling," sometimes picking up when they leave a message.[31]  As she has testified, Ms. Meadows did not and could not ignore Franklin's calls;[32] said calls were harassing, annoying, stressful inconvenient, upsetting, aggravating, frustrating, intimidating, shook her up, etc.[33]

13. Ms. Meadows does not dispute she may have contacted Franklin on October 20, 2008 and did not provide Ms. Taylor's phone number.  However, she disputes the remainder of number 32.  Franklin said Ms. Taylor identified (XXX) XXX-4556 as an *alternate* contact number, not a primary one.[34]  Franklin said Carol Tidmore listed (XXX) XXX-4556 as a contact number but did not state it was associated with the Tidmore accounts.[35]  **Ms. Meadows disputes** (XXX) XXX-4556 was removed from association with the Tidmores on October 20, 2008 to the extent that she still received calls regarding the Tidmores until all Franklin calls stopped around March 2009.[36]  Although Ms. Meadows did not specifically tell Franklin that Ms. Taylor

---

[31]Meadows Dep., 41:7-21; 153:2-6, Plaintiff's Third Evidentiary Submission Exhibit E.

[32]Meadows Dep., 134:17-135:3; 153:2-6; 199:11-18; 203:1-10, Plaintiff's Third Evidentiary Submission Exhibit E.

[33]Meadows Dep., 84:14 - 85:7; 94:11-22; 95:17-19; 95:21 - 96:3; 134:17 - 135:3; 153:2-6; 202:22 - 203:10, Plaintiff's Third Evidentiary Submission Exhibit E.

[34]Transcript of Recording on October 20, 2008, p. 3, lines 10-12, Plaintiff's Third Evidentiary Submission Exhibit F.

[35]Transcripts of Recording on October 20, 2008, p. 4, lines16-17, Plaintiff's Third Evidentiary Submission Exhibit F.

[36]Meadows Dep., 82:2-12; 197:2-22, Plaintiff's Third Evidentiary Submission Exhibit E.

did not live with her or did not use (XXX) XXX-4556 on October 20, 2008, she disputes any implication Ms. Taylor was then living with her or using (XXX) XXX-4556 as her primary/residential number.[37] Further, Franklin did not ask Ms. Meadows these questions but told her Ms. Taylor merely listed (XXX) XXX-4556 as an *alternate* contact number, thus providing no reason to explain that it was not Ms. Taylor's *residential* number.[38] Ms. Meadows told Franklin Ms. Taylor had her own number, (she just could not give it out) thereby implying they could not contact Ms. Taylor at (XXX) XXX-4556 as it was not Ms. Taylor's number.[39]

14. Although Ms. Meadows did not specifically tell Franklin that Ms. Taylor did not live with her or did not use (XXX) XXX-4556 on October 21, 2008, she disputes any implication Ms. Taylor was then living with her or using (XXX) XXX-4556 as her primary/residential number.[40] Franklin did not ask these questions.[41] Ms. Meadows told Franklin Ms. Taylor had her own number where they could contact her, thereby implying they could not contact Ms. Taylor at (XXX) XXX-4556 as it

---

[37]Meadows Dep., 24:11-13; 191:9-192:1, Plaintiff's Third Evidentiary Submission Exhibit E.

[38]Transcript of Recording on October 20, 2008, p. 3, lines 10-12, Plaintiff's Third Evidentiary Submission Exhibit F.

[39]Transcript of Recording on October 21, 2008, p. 3, line 12-16, Plaintiff's Third Evidentiary Submission Exhibit F.

[40]Meadows Dep., 24:11-13; 191:9-192:1, Plaintiff's Third Evidentiary Submission Exhibit E.

[41]Transcript of Recording on October 20, 2008, Plaintiff's Third Evidentiary Submission Exhibit F.

was not Ms. Taylor's number.[42]

15. Ms. Meadows does not dispute she spoke with Franklin October 22, 2008, said she did not have Ms. Taylor's number, or that it appears Franklin viewed the account but did not enter a smart code. However, Ms. Meadows disputes this was the first time she asked Franklin not to call her number and said Ms. Taylor did not live with her; Ms. Meadows told this to Franklin on previous occasions.[43]

16. As set forth in Defendant's Exhibit 11, Ms. Meadows disputes that (XXX) XXX-4556 was necessarily provided in each document as *Ms. Taylor's residential* number or that it was verified as a correct contact number for the entire length of Franklin's calls– from May 2006 until March 2009.[44] Franklin produced a "Patient Information Sheet" for <u>one</u> of Ms. Taylor's 15 alleged debts.[45] Other than its own placement records which Ms. Meadows has disputed, Franklin does not provide documentation to show (XXX) XXX-4556 was listed or "verified" as Ms. Taylor's

---

[42] Transcript of Recording on October 21, 2008, p. 3, line 23 through p. 4, lines 1-2, Plaintiff's Third Evidentiary Submission Exhibit F.

[43] Meadows Dep., 104:1-3; 125:3-10; 150:12-20; 206:2-5, Plaintiff's Third Evidentiary Submission Exhibit E; see also Transcripts of Recordings, Plaintiff's Third Evidentiary Submission Exhibit F.

[44] <u>See</u>, <u>e.g.</u>, Defendant's Exhibit 11 in Doc. 96, at 0165 at Lines 13, 18; at 1067 at Lines 13, 18; at 1069 at Lines 13, 18; at 1070 at Lines 13, 18; at 1071 at Lines 13, 18; at 1072 at Lines 13, 18; at 1073 at Lines 13, 18; at 1074 at Lines 13, 18 (providing no specific designation that (XXX) XXX-4556 is Ms. Taylor's *residential* number and listing additional telephone numbers in different places with no designation as to what kind of numbers they are); <u>see also</u> Meadows Dep., 150:12-20, Plaintiff's Third Evidentiary Submission Exhibit E.

[45] Defendant's Exhibit 11 in Doc. 96, at 0181, 0182.  Although the information provided to this particular creditor does list (XXX) XXX-45556 as Ms. Taylor's "home phone" in November 2007, it also lists several other phone numbers.

12

home/contact **number.**

17. Ms. Meadows received calls for both the Tidmores and Ms. Taylor throughout the 3 year period beginning about May 2006 and thus disputes the Tidmore calls stopped in August 2008.[46] Ms. Meadows disputes Franklin removed her number from Ms. Taylor's accounts as the account notes simply state "Invalid Home Phone" on March 6, 2009 but do not show it was removed.[47] Ms. Meadows does not dispute the rest of number 37.

18. Ms. Meadows disputes her only damages were annoyance. Also, whether she said she suffered distress or not, Ms. Meadows is not a physician and the symptoms/feelings she described in fact represent emotional /mental distress; as a result of Franklin's conduct, Ms. Meadows was annoyed, inconvenienced, upset, aggravated, stressed, harassed, frustrated, intimidated, shaken up, felt threatened on occasion, was woken from sleep on occasion, had difficulty sleeping on occasion, etc.[48] Ms. Meadows does not dispute one particular call, now thought to be a recording, caused her stress and frustration, but disputes this was the only stress or frustration Franklin caused.[49] Ms. Meadows disputes characterization of her

---

[46]Meadows Dep., 82:9-20; 197:2-22, Plaintiff's Third Evidentiary Submission Exhibit E.

[47]Franklin's Account Notes, Plaintiff's Fourth Evidentiary Submission Exhibit G.

[48]Meadows Dep., 84:14 - 85:7; 94:11-22; 95:17-19; 95:21 - 96:3; 134:17 - 135:3; 153:2-6; 202:22 - 203:10, Plaintiff's Third Evidentiary Submission Exhibit E.

[49]Meadows Dep., 84:14 - 85:7; 94:11-22; 95:17-19; 95:21 - 96:3; 134:17 - 135:3; 153:2-6; 202:22 - 203:10, Plaintiff's Third Evidentiary Submission Exhibit E.

...

testimony regarding the "gruff" and threatening nature of one particular Franklin caller. She testified this caller was threatening and she felt threatened by his call; the only qualification was because the call was actually a recording, the caller did not threaten to do anything to her personally.[50]

19. Ms. Meadows disputes her only inconvenience was to stop what she was doing to look at the caller i.d; she was also inconvenienced in that she was woken from sleep on occasion, had difficulty sleeping on occasion, had other calls and her life interrupted, etc.[51] Further, even if some calls went to her answering machine, she did not, and could not, "ignore" Franklin's calls[52] Ms. Meadows disputes she stated it only took seconds to stop what she was doing and look at the caller i.d. or answer Franklin's calls and disputes any attempt to minimize her inconvenience.[53] Although *one* call from Franklin may have taken a minimal amount of time, it invariably took *more* than a minimal amount of time to deal with the "hundreds" of calls Ms. Meadows actually received and/or answered.[54]

---

[50]Meadows Dep., 96:6-7; 97:4-5, Plaintiff's Third Evidentiary Submission Exhibit E.

[51]Meadows Dep., 84:18-22; 94:11-22; 134:17-135:3; 202:22 -203:10, Plaintiff's Third Evidentiary Submission Exhibit E.

[52]Meadows Dep., 134:17-135:3; 153:2-6; 199:11-18; 203:1-10, Plaintiff's Third Evidentiary Submission Exhibit E.

[53]Meadows Dep., 153:9-20 ("seconds" was Mr. Grainger's word), Plaintiff's Third Evidentiary Submission Exhibit E.

[54]Meadows Dep., 201:9-18, Plaintiff's Third Evidentiary Submission Exhibit E.

**WHEREFORE, PREMISES CONSIDERED,** Ms. Meadows again prays this Court GRANT her Partial Motions for Summary Judgment, finding that Franklin has failed to set forth enough evidence creating a genuine issue of dispute as to any material facts underlying the issues set forth in Ms. Meadows' Motions for Summary Judgment.  Based on the evidence before the Court, Ms. Meadows' asserts that the TCPA applies to Franklin's conduct in the instant action and that Franklin has failed to present sufficient evidence to support its bona fide error defense.  Thus, Ms. Meadows prays this Court decide these issues in favor of Ms. Meadows, as a matter of law, and GRANT her Motions for Partial Summary Judgment.

Done this _6th_ day of _May_ , 2010.

Respectfully submitted,

*s/ Meredith L. Phillips*
_____
Meredith L. Phillips
Brandon L. Blankenship
Attorneys for Plaintiff
PHI 066 (ASB-3877-E35P)
BLA 116  (ASB - 6436 - N77B)
Blankenship, Harrelson & Linton, L.L.C.
2001 Park Place North, Suite 825
Birmingham, AL  35203-2774
(205) 912-8241
Facsimile:  (205) 912-8253
Email: meredith.phillips@bhlattorneys.com
Email:  brandon.blankenship@bhlattorneys.com

M11561

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM-ECF system which will send notifications of such filings to:

John W. Scott, Esq.
Brent G. Grainger, Esq.
Scott Dukes & Geisler, P.C.
2100 3rd Avenue North, Suite 700
Birmingham, AL 35203

Done this _**6th**_ day of _**May**_ , 2010.

Respectfully submitted,

*s/ Meredith L. Phillips*
_____
Meredith L. Phillips
Brandon L. Blankenship
Attorneys for Plaintiff
PHI 066 (ASB-3877-E35P)
BLA 116  (ASB - 6436 - N77B)
Blankenship, Harrelson & Linton, L.L.C.
2001 Park Place North, Suite 825
Birmingham, AL  35203-2774
(205) 912-8241
Facsimile:  (205) 912-8253
Email: meredith.phillips@bhlattorneys.com
Email:  brandon.blankenship@bhlattorneys.com

M11561