UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| ELIZABETH MEADOWS, | ] |
| Plaintiff, | ] |
| vs. | ] 7:09-CV-00605-LSC |
| FRANKLIN COLLECTION SERVICE, INC., | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.   Introduction.

The Court has for consideration motions for summary judgment filed by the parties. Plaintiff Elizabeth Meadows ("Meadows" or "Plaintiff") has filed two motions for summary judgment seeking a declaration that this action is subject to the Telephone Consumer Protection Act ("TCPA") and asking this Court to find the bona fide error defense is not available to Defendant Franklin Collection Service, Inc. ("Franklin" or "Defendant") (Docs. 87 & 90.)  Franklin has filed a motion for summary judgment as to all claims.  (Doc. 94.)

Meadows filed her Complaint in this Court on March 26, 2009 (Doc. 1), alleging that Franklin violated the FDCPA by attempting to collect a debt at an inconvenient time (15 U.S.C. § 1692c(a)(1)); by communicating with a person other than the debtor, specifically Meadows as the debts belonged to her daughter Elizabeth Meadows Taylor ("Taylor") and a family that had previously owned her number, the Tidmores (15 U.S.C. § 1692c(b)); and by attempting to collect a debt through harassing, oppressing, or abusive conduct (15 U.S.C. § 1692d).  Plaintiff further alleges that Franklin violated the TCPA by unlawfully initiating "any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order of the FCC under paragraph (2)(B)."  47 U.S.C. § 227(b)(1)(B).

The issues raised in the motion for summary judgment have been briefed by the parties and are now ripe for decision.  Upon full consideration

of the legal arguments and evidence presented, Defendant's motion will be GRANTED in all respects. Plaintiff's motions are DENIED.[1]

II.   Facts.[2]

Meadows is an adult resident of Alabama as defined by the FDCPA. Taylor, Meadows's daughter, lived with her from 2000 until April 2008, other than a brief period from May 2006 to October 2006 in which she lived in a trailer on Meadow's property. Both Meadows's and Taylor's social security number ends in 6376. Meadows's telephone number at her residence was assigned to the Tidmore's until May 2006, at which point Meadows acquired it.

The telephone calls at issue in this matter concerned the collection of debts owed by Taylor or the Tidmores. Meadows did not owe any debt that was the subject of any telephone calls at issue in this matter. As part of its

---

[1] As the Court finds no violation of the FDCPA, there is no need to address arguments regarding Franklin's bona fide error defense.

[2] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

strategy to collect these debts, Franklin placed Meadows phone number in an automated dialer.  This dialer delivered pre-recorded messages when it called Meadows's number.

Although Meadows paid the bill, Taylor was allowed to use the telephone.  She would often supply it as her residential phone number. Between October 25, 2006 to October 21, 2008, Taylor had fifteen separate debts placed with Franklin.  At the same time Franklin was attempting to collect on Taylor's debt, it was also collecting debts from the Tidmores.

Generally speaking, Meadows screens her telephone calls using a caller ID system.  Therefore, although Franklin made a large number of calls to Meadows's residence, she only answered a handful.  While the parties dispute the number of live conversations Meadows had with Franklin, Meadows testified that she spoke with Franklin at least four or five times in regard to Taylor after she moved out of Meadows house and the same number of times regarding the Tidmores.  Meadows alleges that she was annoyed by the number of calls made to her residence, and that at least one of the calls made her feel intimidated and threatened.

III.     Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

"[A]t the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986). However, judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such character that it would warrant the jury finding a verdict in favor of that party." *Id.* at 251 (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448 (1872)). "This standard mirrors the standard for a directed verdict under Federal Rule

of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250.

IV. Analysis.

    A. FDCPA Claims.

The Eleventh Circuit employs the "least-sophisticated consumer standard to evaluate whether a debt collector's communication violates" the FDCPA, particularly in applying the provisions at issue in this matter. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193-1194 (11th Cir. 2010). Meadows has alleged three violations of the FDCPA for Franklin's collection activities — 1692c(a)(1), 1692c(b), 1692(d). Meadows has voluntarily abandoned her claims under 1692c(a)(1). (Doc. 102 at 20.) Therefore, those claims will be dismissed.

Turning to 1692c(b), Meadows claims that Franklin violated the FDCPA by communicating with a third party, Meadows, about the debts of another. Franklin states that, since Meadows is not the debtor whose debt was disclosed to another, she lacks standing to bring a claim under the FDCPA. Standing involves both constitutional and prudential requirements. Article

III of the Constitution requires a plaintiff to show (1) that she has suffered injury in fact; (2) that the injury is fairly traceable to the actions of the defendant; and (3) that the injury is likely to be redressed by a favorable decision.  *Bennett v. Spear*, 520 U.S. 154, 162 (1997).  Prudential requirements are "(1) whether the plaintiff's complaint falls within the zone of interests protected by the statute or constitutional provision at issue; (2) whether the complaint raises abstract questions amounting to generalized grievances which are more appropriately resolved by the legislative branches; and (3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties." *Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir. 1994).  A party that fails the prudential requirements may bring suit only if it meets three criteria — "The litigant must have suffered an injury in fact, thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute, the litigant must have a close relation to the third party, and there must exist some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 411 (1991) (citations omitted).

15 USC § 1692c(b) prohibits communication "in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." Some district courts have concluded that a non-debtor has standing to bring a claim under 1692c(b). *See, e.g. Thomas v. Consumer Adjustment Co.*, 579 F. Supp. 2d 1290 (E.D. Mo. 2008). The Eleventh Circuit, however, has indicated in an unpublished opinion that it takes the more logical position — only the debtor can sue for a violation of 1692c(b). In *Johnson v. Ocwen Loan Servicing*, the Eleventh Circuit found that a plaintiff did not have standing because she "was not a borrower or otherwise obligated on the Ocwen loan and, therefore, did not suffer an injury-in-fact." 2010 U.S. App. LEXIS 5339 *9 (11th Cir. Fla. Mar. 15, 2010). The Eleventh Circuit noted that these provisions of the FDCPA were intended to "protect 'consumers' from abusive debt collection practices and other deceptive actions taken by creditors." *Id.* at 11.

While not binding on this Court, this position is imminently reasonable. The crux of 1692c(b) and the injury it is intended to prevent is the dispersal

of a debtor's private information to another party.  As that is the interest protected, only the debtor has standing to bring an action for a violation of 1692c(b).  Therefore, summary judgment is due to be GRANTED on this claim.[3]

Franklin does not dispute, however, that Plaintiff has standing to bring claims under 1692d and 1692d(5).  15 USC § 1692d prohibits any conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 USC § 1692d(5) prohibits a debt collector from "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."  The Eleventh Circuit has indicated that "claims under § 1692d should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse."  *Jeter v. Credit Bureau*, 760 F.2d 1168, 1179 (11th Cir. 1985).

---

[3] Of course, this is not to say that non-debtors never have standing under the FDCPA.  Where the conduct complained of is harassment and abuse, the abused party has an injury in fact and standing to bring a claim against the harasser.

§ 1692d provides a non-exhaustive list of the type of conduct that is proscribed by the FDCPA. These include threat of violence or harm to reputation; obscene or profane language; publication of debtor's name; advertisement of sale of debt meant to coerce payment; repeated calls with the intent to annoy, abuse, or harass; and placement of calls without disclosure of the caller's identity. 15 USC § 1692d. While this list is not exclusive, it nevertheless helps to define the types of conduct Congress intended to prohibit. It is clear Congress meant to ensure that "every individual, whether or not he owes the debt, has a right to be treated in a reasonable or civil manner." *Jeter*, 760 F.2d at 1179. Therefore, whether a collection activity is a violation of the FDCPA turns on its reasonableness.[4] Furthermore, debt collection, by its very nature, is not pleasant. As the Eleventh Circuit has recognized, "embarrassment, inconvenience, and further expense" are natural consequences of debt collection that "are . . . commonplace." *Id*.

---

[4] The Eleventh Circuit has noted, "Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury." *Jeter*, 760 F.2d at 1179. It did so, however, in a case in which it affirmed the district court's grant of summary judgment.

Turning to the number of calls Meadows received, the Plaintiff has failed to show how Franklin's calling practices in this matter were unreasonable. The parties dispute the exact number of calls made to Meadows. Franklin claims that approximately 200 calls were initiated on the Taylor debts between October 2006 and March 2009 with another twenty-seven on the Tidmore account. Plaintiff claims the number of calls on the Taylor debts is closer to 300. While the final numbers may seem large, they were spread over a period of two and a half years. Meadows testified that occasionally she would receive two or three calls a day, sometimes one, and sometimes none. (Doc. 84, Ex. E, Meadows Depo. at 68:18-21.) Of these calls, Meadows answered only a handful. Meadows "knew the calls were not for me because I didn't owe anybody." (Doc. 84, Ex. E, Meadows Depo. at 40:8-9.) When the calls were for Taylor, Meadows would tell the caller that she would take a message. *Id*. at 50-51. When they were for the Tidmores, she would explain that while the number had belonged to the Tidmores, it no longer did. *Id*.

While it is certainly possible that a large and unreasonable volume and pattern of telephone calls could constitute a violation of the FDCPA, a

handful of calls a week, particularly when the vast majority of those calls go unanswered, does not reach that level. The FDCPA is not intended to prevent debt collection itself, but unreasonable debt collection. As the Second Circuit has recognized, in drafting the FDCPA, Congress balanced "the interest of consumers in freedom from harassment and the interests of ethical debt collectors in freedom from unnecessary restrictions." *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 26 (2d Cir. 1989). Meadows has stated that while the calls did not cause her to suffer emotional distress, she was "[j]ust really annoyed" by them. (Doc. 84, Ex. E, Meadows Depo. at 136:8-9.) The FDCPA, however, "prohibits only oppressive and outrageous conduct." *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 394 (D. Del. 1991). It is unfortunate that Meadows, who apparently has never been delinquent on her debts, was forced to endure collection activities because of her daughter and the Tidmores providing her number on their unpaid accounts. But her annoyance and inconvenience does not rise to the level of a violation of the FDCPA.

    Nor does the content of the calls in question indicate abusive behavior on the part of Franklin. Meadows testified in her deposition that the "most

stressed out I ever got with the calls was the night I was woke up with the call from Scott." (Doc. 84, Ex. E, Meadows Depo. at 134:1-3.) This particular call was a recorded message. Meadows, however, believed she was speaking to an actual person. In response to a question about whether or not the language of the message was threatening, she stated, "No. It wasn't like he was going to do something or whatever. But the debt was owed and it was going to be paid and – I don't know his exact words. But I kept trying to find out who are you trying to reach, who do you want." *Id.* at 96:1-10. Meadows stated that the Scott recording was not threatening just "very rude." *Id.* at 97:4-9. While Meadows could not explain exactly how Scott was rude, she stated that he just "wasn't someone you would want to talk to." *Id.* at 97:13-15. That collection calls are by their nature unpleasant is unsurprising, and Meadows has failed to show how Franklin's collection practices were unreasonable and abusive.

There is no allegation by Plaintiff that the telephone number in question was not supplied by the Tidmores and her daughter as a contact number for the debts in question. Meadows has argued, "Regardless of what phone number Franklin had on file for Ms. Taylor, once Ms. Meadows

indicated the debt was not hers or Ms. Taylor did not live there, Franklin should have stopped calling her." (Doc. 102 at 25.)  Such a requirement would represent an unreasonable restriction on Franklin's collection activities.  Under this restriction, a debtor would need only to say that the collection agency had the wrong number to short-circuit the collection process.  Franklin is allowed to perform reasonable follow-up activities to ensure that, in fact, the number they possess is incorrect.[5]

Simply put, in relation to the FDCPA, there is no evidence that Franklin acted unreasonably in its collection activities.  The number of calls made are not excessive, particularly given Meadows's admission that she rarely answers her phone.  And there is no evidence that the content of the calls was abusive.  Therefore, Franklin's motion for summary judgment is due to be GRANTED as to Meadows's claims under the FDCPA.

B.   TCPA Claims.

Meadows has also accused Franklin of violating the TCPA.  Enacted in an effort to address telephone marketing calls and practices, the TCPA

---

[5] Franklin has provided evidence that it removed Meadow's number from the Tidmore account as soon as Meadows explained she had inherited their number. (Doc. 84, Ex. F at 6-10.)  But even assuming Meadows's testimony that it performed follow-up calls is correct, there is no evidence that Franklin's activities were unreasonable.

makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the [FCC] under paragraph (2)(B)."  47 U.S.C. § 227(b)(1)(B).  The FCC has carved an exception in the TCPA for parties with whom the caller has an "established business relationship."  7 FCC Rcd 8752, 8753 (1992).  Furthermore, the FCC has made clear, "all debt collection circumstances involve a prior or existing business relationship.  In addition, we tentatively concluded that debt collection calls are exempt from the TCPA's prohibitions against prerecorded message calls because they are commercial calls which do not convey an unsolicited advertisement and do not adversely affect residential subscriber rights."  7 FCC Rcd 8752, 8771-8772 (1992).

Plaintiff contends that since Meadows is a non-debtor, the debt collection exemption does not apply.  *See, e.g., Watson v. NCO Group, Inc.*, 462 F. Supp. 2d 641 (E.D. Pa. 2006).  This argument, however, does not succeed.  As noted above, the FCC has determined that *all debt collection circumstances* are excluded from the TCPA's coverage.  This finding is broad

enough to cover a debt collection activity that contacts a non-debtor. Furthermore, it is clear that Franklin, in calling Meadows's number, was attempting to contact a debtor using the number provided by that debtor. While Meadows may have answered the phone, she was not the intended recipient of the call.  Franklin's actions violated neither the spirit nor the letter of the TCPA.  Therefore, summary judgment is due to be GRANTED on this claim.[6]

V.   Conclusion.

For the reasons stated above, Defendant's Motion for Summary Judgment is due to be GRANTED.  Plaintiff's motions are due to be DENIED.  A separate order in conformity with this opinion will be entered.

Done this 25th day of June 2010.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671

---

[6] Meadows's logic would seem to result in a debt collector violating the TCPA whenever it called a debtor's number and another member of the debtor's family answered.