Case 7:09-cv-00605-LSC   Document 125   Filed 03/16/11   Page 1 of 15

FILED
2011 Mar-16 AM 08:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

10-13474

Sharon Harris
United States District Court
1729 FIFTH AVE N
BIRMINGHAM, AL 35203

---

---

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

March 15, 2011

Sharon Harris
United States District Court
1729 FIFTH AVE N
BIRMINGHAM, AL 35203

Appeal Number: 10-13474-GG
Case Style: Elizabeth Meadows v. Franklin Collection Service
District Court Docket No: 7:09-cv-00605-LSC

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

The clerk of the court or agency shown above is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being mailed to counsel and pro se parties. A copy of the court's decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: James O. Delaney
Phone #: 404-335-6113

Enclosure(s)

MDT-1 Letter Issuing Mandate

# UNITED STATES COURT OF APPEALS
### For the Eleventh Circuit

No. 10-13474

District Court Docket No.
7:09-cv-00605-LSC

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 11, 2011
JOHN LEY
CLERK

ELIZABETH MEADOWS,

    Plaintiff - Appellant,

versus

FRANKLIN COLLECTION SERVICE, INC.,

    Defendant - Appellee.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

Appeal from the United States District Court for the
Northern District of Alabama

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

Entered: February 11, 2011
For the Court: John Ley, Clerk of Court
By: Djuanna Clark

ISSUED AS MANDATE
MAR 1 5 2011
U.S. COURT OF APPEALS
ATLANTA GA

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 10-13474
Non-Argument Calendar

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 11, 2011
JOHN LEY
CLERK

D.C. Docket No. 7:09-cv-00605-LSC

ELIZABETH MEADOWS,

Plaintiff-Appellant,

versus

FRANKLIN COLLECTION SERVICE, INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Alabama

(February 11, 2011)

Before BLACK, WILSON and COX, Circuit Judges.

PER CURIAM:

Elizabeth Meadows ("Meadows") sued Franklin Collection Service, Inc. ("Franklin"), alleging that its collection practices violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the Telephone Consumer Protection

Act ("TCPA"), 47 U.S.C. § 227. Both parties moved for summary judgment. The district court granted summary judgment in favor of Franklin as to all claims, and denied Meadows's motion. Meadows now appeals. We affirm the district court's judgment as to the TCPA claims, but reverse it as to the FDCPA claims.

We review a district court's summary judgment decision de novo, applying the same legal standards as those that governed the district court. *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1194 (11th Cir. 2010) (citation omitted). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We construe the facts and draw all reasonable inferences in favor of the non-moving party. *Abel v. S. Shuttle Servs., Inc.*, 620 F.3d 1272, 1273 n.1 (11th Cir. 2010) (citation omitted). We therefore state the facts in the light most favorable to Meadows, the non-moving party.

Meadows did not owe any of the debts that were the subject of the telephone calls at issue in this case. Those calls concerned the collection of debts owed by Meadows's daughter, Elizabeth Meadows Taylor ("Taylor"), and by the family that previously owned Meadows's telephone number, the Tidmores. Taylor lived with Meadows from 2000 until April 2008, except for a six-month period (May 2006 to October 2006) in which she lived in a trailer on Meadows's property. Meadows's

telephone number at her residence was assigned to the Tidmores until May 2006, at which point Meadows acquired it.

From May 2006 until March 2009, Franklin called Meadows's residence multiple times per week regarding either the Tidmore or Taylor debts. According to Franklin's policy, collection calls are made on a per debt basis, so the more debts that a debtor has with Franklin the more calls that Franklin makes to a debtor. Taylor had fifteen debts with Franklin. It is unclear how many debts the Tidmores had with Franklin. While the parties dispute the volume and frequency of the calls, Meadows testified that she received about 300 calls over a two and a half year period regarding either the Taylor or the Tidmore debts. Meadows would receive up to three calls a day.

Most of these calls were made using an automatic dialer, which delivered prerecorded messages without the capability of human interaction. While the parties dispute the number of live conversations Meadows had with Franklin, Meadows testified that she spoke with a live Franklin representative at least four or five times in regard to the Tidmores and the same number of times regarding Taylor. During these conversations, Franklin asked Meadows for contact information on the Tidmores and Taylor, and asked Meadows to give messages to Taylor. Meadows told Franklin, as early as May 2006, that she was not the debtor, and that she did not know

3

or wish to provide location information for the debtors. And, she asked that Franklin stop calling. Franklin continued to call many more times, until March 2009.

## A. FDCPA Claims

Meadows contends that the district court erred in granting summary judgment in favor of Franklin on her 15 U.S.C. § 1692d claims.[1] Section 1692d prohibits a debt collector, such as Franklin, from engaging in conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Section 1692d then provides a non-exhaustive list of prohibited conduct. Particularly relevant to this appeal, section 1692(d)(5) prohibits a debt collector from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." In enacting the FDCPA, Congress meant to ensure that "every individual, whether or not he owes the debt, has a right to be treated in a reasonable or civil manner." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1178 (11th Cir. 1985) (internal quotation marks and citation omitted). And, we have established that "claims under § 1692d should be viewed from the perspective of a consumer whose circumstances makes [sic] him relatively more susceptible to harassment, oppression,

---

[1] Meadows does not challenge the dismissal of her claims asserted under § 1692c(a)(1) and § 1692c(b).

or abuse." *Id.* at 1179. "Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury." *Id.*

In granting Franklin's motion for summary judgment, the district court concluded as a matter of law that Franklin's calls were not made with an intent to annoy, abuse, or harass Meadows. The district court found that the approximately 300 calls that Meadows received from Franklin were not unreasonable because they were spread out over two and a half years, from October 2006 to March 2009.[2] The district court also reasoned that Franklin's collection practices were not unreasonable because many of its calls to Meadows went unanswered, as Meadows had caller identification and knew the calls were not for her. The district court also rejected Meadows's argument that, once she informed Franklin that the debts were not her own or that Taylor no longer lived with her, Franklin should have stopped calling. The district court reasoned that Franklin must be permitted to perform reasonable follow-up activities to ensure that the phone number it possesses is incorrect. Otherwise, "a debtor would need only to say that the collection agency had the wrong number to short-circuit the collection process." (Dkt. 110 at 15.)

---

[2] The parties dispute the exact number of calls made to Meadows. Franklin claims that approximately 200 calls were made on the Taylor debts and twenty-seven were made on the Tidmore debts. Meadows claims the total number of calls is closer to 300. At the summary judgment stage, we take the facts in the light most favorable to Meadows, the non-moving party.

We find that the district court erred in granting summary judgment in favor of Franklin on the § 1692d claim. Taking the facts in the light most favorable to Meadows, she received approximately 300 calls over a two and a half year period regarding debts she did not owe and people she did not know. Meadows testified that occasionally she would receive up to three calls a day. Most of the hundreds of calls Franklin placed to Meadows used an automated dialer, a machine capable of continuously dialing and leaving messages without human interaction. Franklin, moreover, continued to call Meadows until March 2009 despite being informed in May 2006 that the debts were not her own and that the debtors did not live with her. Meadows further testified that Franklin's phone calls eventually made her feel harassed, stressed, upset, aggravated, inconvenienced, frustrated, shaken up, intimidated, and threatened on occasion. And, several times the calls woke her up from sleep and caused her difficulty sleeping. (Dkt. 84-1 at 84-85, 94, 95-96, 134-35, 153, 202-03.) Considering the volume and frequency of the calls, Meadows's testimony that she informed Franklin of its mistake in May 2006, and Meadows's testimony regarding the emotional stress caused by the calls, we find that there is a genuine issue of material fact as to whether Franklin caused Meadows's telephone to ring with the intent to annoy or harass her.

We reject Franklin's contention that its telephone calls were not harassing because Meadows did not answer them. The plain language of § 1692d prohibits *"causing a telephone to ring* . . . with intent to annoy, abuse or harass any person at the called number." (emphasis added). The statute itself recognizes that answering the phone is not necessary for there to be harassment. This makes good sense because a ringing telephone, even if screened and unanswered, can be harassing, especially if it rings on a consistent basis over a prolonged period of time and concerns debts that one does not owe. As Meadows testified, even though she did not answer every call, she had to stop whatever she was doing to see who was calling. And, the reason Meadows did not answer the calls was because she had previously told Franklin multiple times that she did not owe the debt and the debtors did not live with her. Thus, a reasonable juror could find that Franklin's telephone calls were harassing even though Meadows did not answer many of the calls.

We recognize that Franklin's records indicated that Meadows's phone number belonged to the Tidmores and to Taylor, and that Franklin may have been attempting to reach those actual debtors with its phone calls. And, we recognize that when a debt collector is told that a certain telephone number for a particular debtor is incorrect, the debt collector must be able to perform reasonable follow-up activities to ensure that the number they possess is actually incorrect. In this case, however, there is a

7

factual dispute as to whether Franklin's follow-up activities were reasonable. The reasonableness of Franklin's follow-up activities turns in part on when and in what manner Meadows informed Franklin that she did not owe the debts and that Taylor did not live with her. Meadows testified that she told Franklin in May 2006 that her phone number no longer belonged to the Tidmores, she did not know the Tidmores, and the Tidmore debt was not hers. After receiving this information, Franklin continued to call Meadows regarding the Tidmore debt until early 2009. In addition, Meadows has produced evidence that Taylor lived in her own home with her own phone number from May 2006 to October 2006, and from April 2008 through March 2009. Meadows testified that during these time periods, in which Taylor was not living with Meadows and had her own phone number, Meadows informed Franklin that the debts belonged to Taylor and that Taylor did not live with her. Franklin nonetheless continued to call Meadows's phone number.[3] Taking these facts as true, a reasonable jury could conclude that Franklin's calling practices were harassing

---

[3] Franklin disputes many of these facts. According to Franklin, it did not speak with Meadows regarding the Tidmores until November 2006, and it removed Meadows's number from the Tidmore account after being informed it was incorrect. Franklin also contends that it did not speak with Meadows regarding Taylor until 2007, and that Meadows did not request Franklin to stop making calls regarding the Taylor debts until October 2008.
  Because this case is at the summary judgment stage, and Meadows is the non-moving party, we must take the facts in the light most favorable to her. We also note that even if Meadows did not ask Franklin to stop calling until October 2008, Franklin's own collection notes show that it called Meadows nearly seventy times after that date.

because Franklin continued to call Meadows despite being on notice that she was not the debtor and that her phone number was not correct for Taylor or the Tidmores.

In sum, viewing the evidence in the light most favorable to Meadows, a reasonable juror could conclude that Franklin intended to annoy, abuse, or harass Meadows through its collection practices. We therefore reverse the district court's grant of summary judgment in favor of Franklin on the § 1692d claim.

## B. TCPA Claims

Meadows contends that the district court erred in granting summary judgment in favor of Franklin on her TCPA claims. Meadows alleges that Franklin violated two provisions of the TCPA. We address each claim in turn.

Meadows first alleges that Franklin violated 47 U.S.C. § 227(b)(1)(B). That section makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the [Federal Communications] Commission under paragraph (2)(B)." The FCC has created two regulatory exemptions that are applicable to the debt-collection calls in this case. First, the FCC exempts from the TCPA's statutory prohibition against prerecorded calls any call "made to any person with whom the caller has an established business relationship at the time the call is

made[.]" 47 C.F.R. 64.1200(a)(2)(iv). Second, the FCC exempts any call "made for a commercial purpose but does not include or introduce an unsolicited advertisement or constitute a telephone solicitation[.]" 47 C.F.R. 64.1200(a)(2)(iii).

The FCC has made clear that these two exemptions "apply where a third party places a debt collection call on behalf of the company holding the debt." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8773, ¶ 39 (July 26, 1995). The FCC has also clarified that "all debt collection circumstances involve a prior or existing business relationship." *Id.* at 8771-72, ¶ 36.

We agree with the district court that Franklin did not violate the TCPA because its prerecorded debt-collection calls are exempt from the TCPA's prohibitions on such calls to residences. Franklin had an established business relationship with the debtors (Taylor and the Tidmores), and was attempting to contact them at Meadows's number. Because Franklin had an existing business relationship with the intended recipient of its prerecorded calls, and the calls were made for a commercial, non-solicitation purpose, we conclude that those calls are exempt from the TCPA's prohibitions of prerecorded calls to residences.

We reject Meadows's argument that because she is a non-debtor, then the debt-collection exemptions do not apply because she did not have an established business

relationship with Franklin. As the district court noted, the FCC has determined that all debt-collection circumstances are excluded from the TCPA's coverage, and thus the exemptions apply when a debt collector contacts a non-debtor in an effort to collect a debt. Otherwise, a debt collector that used a prerecorded message would violate the TCPA if it called the debtor's number and another member of the debtor's family answered.

Meadows also contends that Franklin violated 47 U.S.C. § 227(c)(5). That section prohibits an entity from making more than one "telephone solicitation" to the same person within a twelve-month period. Meadows argues that Franklin's calls constituted "telephone solicitations" under the TCPA, and thus Franklin violated § 227(c)(5) by calling Meadows more than once in a twelve-month period.

For purposes of the TCPA, the FCC has defined a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. 64.1200(f)(12). Despite the undisputed fact that Franklin called Meadows in order to collect the debts of others, Meadows argues that the debt-collection calls were nonetheless "telephone solicitations." According to Meadows, Franklin's telephone calls, which sought to collect the debts of Taylor and the Tidmores from those individuals, were implicit attempts to ask Meadows to

pay the debt herself. As a result, Franklin, by calling Meadows about the debts of others, was actually asking Meadows to "purchase her privacy and peace" and "invest in its service of debt collection" because the calls would continue if Meadows did not pay the debt herself.

We reject Meadows's invitation to stretch and distort the meaning of "telephone solicitation." It is undisputed that Franklin did not try to sell anything to Meadows, and did not offer to provide her any services. Meadows admits as much. (Dkt. 84-1 at 78:9-21.) Moreover, the FCC has unequivocally stated that "calls solely for the purpose of debt collection are not telephone solicitations and do not constitute telemarketing" and "calls regarding debt collection . . . are not subject to the TCPA's separate restrictions on 'telephone solicitations.'" *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565, ¶ 11 (Jan. 4, 2008). In our view, the definition of a "telephone solicitation," especially in light of the FCC's ruling interpreting that definition, is clear and does not include implicit "purchases of peace" and investments in services that Franklin never offered to Meadows. We accordingly find that Franklin's calls were not telephone solicitations, and affirm the district court's grant of summary judgment in favor of Franklin on the § 227(c)(5) claim.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia